[No. 14281. Department One. January 11, 1918.]

ELMER MAGNUSON, *a Minor, by his Guardian etc., Appellant,*

v. SWEDISH HOSPITAL, *Respondent.*[1]

CHARITIES—HOSPITALS—INJURY TO PATIENT—LIABILITY. A patient admitted to a charitable hospital cannot recover from the hospital for injuries caused by the negligence of the nurses employed, although a fee for admission was paid, where the hospital was not operated for profit, the money so paid was used in the operation of its hospital work, and due care was exercised in the employment of nurses.

Appeal from a judgment of the superior court for King county, Jurey, J., entered November 29, 1916, upon sustaining a demurrer to the complaint, dismissing an action in tort. Affirmed.

[1]Reported in 169 Pac. 828.

*Will H. Thompson,* for appellant.
*Saunders & Nelson,* for respondent.

WEBSTER, J.—This action was brought by Elmer Magnuson, a minor, by his guardian *ad litem,* against the Swedish Hospital, a corporation, to recover damages alleged to have been caused by defendant's negligence.

The amended complaint charges, in substance, that the Swedish Hospital is a charitable corporation, organized and existing under and by virtue of the laws of this state, and is engaged in operating and conducting a hospital for the care and treatment of the sick and afflicted, without profit to the stockholders or organizers of that corporation; that, on March 3, 1914, the plaintiff was an infant under the age of four years, and was suffering from a severe injury and physical malformation. On that date he was taken by his father, the guardian *ad litem* in this case, to the hospital to undergo a serious surgical operation, and thereafter to be nursed, cared for and treated; that, after the operation had been performed, the plaintiff was placed in charge of nurses in the employ of defendant whose duty it was, under their employment, to watch, care for and restrain the plaintiff from interfering with the condition in which the injured parts had been left by the operating surgeon; that the nurses negligently and carelessly failed to guard and protect the plaintiff, and, by reason thereof, he removed his hands from the bandages in which they had been placed and tore away the wrappings and protections to the lacerated parts, and otherwise seriously injured himself; that, as a result, the effectiveness of the operation was wholly destroyed, and it was rendered impossible ever to cure the affliction from which the plaintiff was suffering and to relieve which the operation was performed; that the defendant, at the time of accepting the plaintiff as a patient, demanded and received in advance from the father of the plaintiff the sum of ten dollars, and is now prosecuting an action against the father

to recover the additional sum of sixty-four dollars and fifty cents for the care and treatment of the plaintiff; that, by reason and on account of the negligence, carelessness and heedlessness of the defendant, through the nurses in its employ, the plaintiff was so injured as to become a helpless invalid, and will so continue for the remainder of his natural life, and was thereby damaged in the sum of twenty-five thousand dollars, for which amount judgment is prayed.

To this amended complaint, a demurrer was sustained, upon the ground that the facts stated were not sufficient to constitute a cause of action against the defendant. The plaintiff refused to plead further, whereupon judgment was entered dismissing the action, from which the plaintiff has appealed.

The single question for determination is whether a patient admitted to a hospital maintained for charity can recover against such hospital for injuries caused by the negligence of nurses therein employed.

The articles of incorporation of the defendant, a copy of which is attached to the amended complaint, provide:

"The objects for which this corporation is formed are: first, to found, construct and maintain a hospital in the city of Seattle, aforesaid, which shall always be exclusively under the management and control of a board of trustees, who shall be of Swedish descent, except in so far as this provision may be modified by the compliance with the law of exceptions requiring the appointment of certain municipal officers as trustees *ex-officio;* and said hospital shall be solely for the medical and surgical treatment and nursing of the sick and infirm, and no physician shall be a member of the medical staff who is not a regular practicing physician of the allopathic school. It shall be the purpose of the trustees of this corporation to conduct the affairs of the same with a view of making the said hospital self-sustaining, but they shall, however, have the privilege of furnishing needy persons with gratuitous services at said hospital, and generally to provide for charitable help to such persons where the same may be necessary and proper, according to their best judgment and discretion. In the event that profits and income should

accrue in the management of said hospital, the same shall, together with donations and contributions to this corporation from whatsoever source, become and remain the sole property of said corporation; and no member or officer of this corporation shall have any right, title or interest in the same, except in a fiduciary capacity; nor shall any donor or contributor to said hospital have any right, title or interest in the profits, income or any property belonging to said corporation, but the same shall be applied to the support, maintenance and enlargement of said hospital and its facilities after the payment of the expenses thereof."

The articles further recite "there shall be no capital stock, nor shares of stock issued."

The question of whether a corporation which is organized for charitable purposes and which does not seek to profit by the enterprise in which it is engaged is liable for the negligence of those in its employ, where it is not contended that the corporation was negligent in the selection or retention of the person for whose conduct it is sought to be held, is not a new one in this court. In *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95, the defendant deducted one dollar each month from the wages of the men engaged in its service and, in return, maintained a hospital and provided a physician for the sole purpose of relieving sick and injured employees, without additional expense to them and with no intention on the part of the mining company of making any profit out of the undertaking. We there held that the corporation was a charitable institution so far as the hospital feature was concerned, and, even though the company did employ the physician to care for and treat the sick and injured workmen, it was not liable for his negligence, but was responsible only for want of ordinary care in selecting him. This doctrine was reaffirmed in the case of *Wells v. Ferry-Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426. Next came *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235, a case very similar in its facts to the one now under consideration. In that action the de-

fendant Upper Columbia Medical Missionary and Benevolent Society was a corporation organized for charitable purposes. Its articles stated that the object of the corporation was to found a medical and charitable sanitarium, hospital and asylum at the city of Spokane and other points in the state, for the care and relief of indigent or other sick or insane persons; that patients who were able to pay would also be received, but the funds and property acquired from all sources were to be devoted exclusively to the maintenance and improvement of the institution, and that it would not be conducted, directly or indirectly, for private gain. The society had in its employ, at the hospital conducted by it at Walla Walla, Dr. Willis H. Warner. The plaintiff, for a consideration, employed the corporation to give her certain medical and surgical treatment, and subsequently brought action to recover damages, both from Dr. Warner and the corporation, for the alleged malpractice of the former. Dr. Warner was held liable, but, upon the authority of *Richardson v. Carbon Hill Coal Co.* and *Wells v. Ferry-Baker Lumber Co.*, *supra*, the corporation was discharged. In that case, as in this, the contention was made that, inasmuch as the plaintiff had paid for the services of the hospital, a different rule should apply, but in considering the point, Judge Gose said:

"The same rule applies where the plaintiff has paid for the services rendered, where the amount received was not for private gain, but to more effectively accomplish the purposes for which the charity was founded."

Many authorities are cited in support of the statement, and a careful reexamination of them shows that they unquestionably sustain the rule announced. The reason upon which the principle is based is well stated by Lowell, district judge, in *Powers v. Massachusetts Homeopathic Hospital*, 109 Fed. 294, 65 L. R. A. 372:

"The plaintiff was what is sometimes called a 'paying patient,' the rate of her payment being $14 a week. Upon

this ground her counsel has sought to distinguish her case from that of a patient in the hospital who pays nothing. In our opinion, the difference is immaterial. As has been said, the defendant was a charitable corporation; that is, a corporation organized exclusively for charity. That the ministrations of such a hospital should be confined exclusively to the indigent is not usual or desirable. Those of moderate means from necessity, and not a few rich people from choice, resort to great charitable hospitals for treatment, especially in surgical cases. Throughout the world this is the custom in these institutions, whether they are maintained by individual, religious, or municipal charity. From patients who are not indigent, a payment is commonly permitted or required. Commonly, and in the case at bar quite manifestly, this payment does not make full pecuniary compensation for the services rendered. Those who make a considerable payment not infrequently receive in some respects a more expensive service than do those who make a small payment or none at all; but the payment required is usually calculated upon the patient's ability to pay, rather than upon the whole cost of the treatment he receives. . . . In our opinion, a paying patient in the defendant hospital, as well as a non-paying patient, seeks and receives the services of a public charity. That such a hospital in its treatment of a rich patient shall be held to a greater degree of care than in its treatment of a pauper is not to be tolerated. Certain luxuries may be given the former which the latter does not get, and this for various reasons; but the degree of protection from unskilled and careless nurses must be the same in both cases."

The articles of incorporation of the Swedish Hospital plainly demonstrate that it is a charitable institution within the meaning of the rule. There are no stockholders, and no one is permitted to profit by the operation of the hospital. It is provided that, in the event any income shall accrue over and above the amount necessary to support the institution, the same, together with all donations and contributions, shall become and remain the sole property of the corporation, and no member or officer thereof shall have any right, title or interest in or to the same, but such surplus shall be applied

to the support, maintenance and enlargement of the hospital and its facilities.

It seems too plain for argument that the judgment appealed from cannot be reversed unless our former decisions, and particularly the *Wharton* case, are overruled. It is useless to attempt to make distinctions where none exist, or to endeavor to point out differences between things exactly alike. We must either follow our former cases or expressly overrule them. Distinguished counsel for appellant, with great earnestness and ability, insists that we should pursue the latter course and adopt the rule announced by the supreme court of Alabama, in *Tucker v. Mobile Infirmary Ass'n*, 191 Ala. 572, 68 South. 4, L. R. A. 1915D 1167. In that case, after an able and learned discussion of the question, it was held by a divided court that a hospital treating indigent patients without charge, but requiring and receiving compensation from patients able to pay, which was not operated for profit, and which used the money so received in the operation and extension of its hospital work, and exercised due care in the selection and retention of a nurse and did not know of her incompetency, if any, was not exempt from liability for damages to a patient received for a reasonable compensation for a surgical operation and who, after the operation was performed, was scalded internally and externally by reason of the negligence of the nurse. In the course of that opinion, however, this very significant language is found:

"The question presented is one of much interest, and a subject upon which much appears to have been written in recent years. It must be conceded at the outset that the great weight of authority in this country, certainly from a numerical standpoint, lies with the defendant in this case. It appears, however, to be conceded by counsel, and we have found nothing to the contrary, that the question is an open one in this state, leaving us free to act without any constraint of the rule of *stare decisis*, and in accordance with what we deem to be the law."

Since it is conceded that the contrary rule is the one supported by the great weight of authority, and we, unlike that court, are not free to act without constraint of the rule of *stare decisis*, we deem it better to adhere to our former decisions, which are confessedly in keeping with the rule announced in the vast majority of cases dealing with the question.

In the *Tucker* case, much stress is laid upon *Glavin v. Rhode Island Hospital*, 12 R. I. 411, 34 Am. Rep. 675, which unquestionably lends strong support to the conclusion reached by the Alabama court; but it is interesting to note that, very soon after the decision in the *Glavin* case was announced—we believe at the next succeeding session—the legislature of Rhode Island enacted the following statute:

"No hospital incorporated by the general assembly of this state, sustained in whole or in part by charitable contributions or indowments, shall be liable for the neglect, carelessness, want of skill or for the malicious acts, of any of its officers, agents or employees in the management of, or for the care or treatment of, any of the patients or inmates of such hospital; but nothing herein contained shall be so construed as to impair any remedy under existing laws which any person may have against any officer, agent or employee of any such hospital for any wrongful act or omission in the course of his official conduct or employment." General Laws Rhode Island, 1896, p. 538.

Thus, it will be seen, the rule in that state was changed by legislative enactment and the doctrine as enunciated by our decisions expressly adopted.

The legislature of Washington has convened and adjourned many times since the decision in the *Richardson* case was announced, and two sessions have passed since the opinion in the *Wharton* case was filed, and the law-making body has not seen fit to declare that sound public policy or other considerations demand a different rule.

It must be admitted that there is some contrariety of opinion as to the true principles upon which the rule of non-

liability rests. One line of cases bases the doctrine on what is called "the trust fund theory;" that is to say, that all funds of charitable corporations and associations are held in trust for the particular purpose for which the charity was founded, and that it would amount to a breach of trust to apply them to other uses; that to give damages out of a trust fund would not be to apply it to the object which the author of the fund had in view, but would be to divert it to an entirely different purpose. Other cases lay stress upon the idea that the rule of *respondeat superior* does not apply to such institutions, for the reason that the servants, in the discharge of their duties, are not engaged in work which is for the benefit or profit of the master. Still others proceed upon the thought that one who accepts the benefit of the institution is taken impliedly to have assented to assume the risk of negligent injuries caused by servants properly selected and retained, or to have waived liability for such injuries. But, regardless of the reasons upon which the result is worked out, it cannot be doubted that the rule of non-liability is supported by the overwhelming weight of authority. In this connection it may be added that we quite agree with what was said by the circuit court of appeals in *Powers v. Massachusetts Homeopathic Hospital, supra:*

"Though we feel constrained to differ from the reasoning followed by some other courts in reaching the same conclusion, we are not unmindful that the identity of conclusion reached, though by different roads, is a strong proof of its correctness. Doubtless a weight of authority is more overwhelming if it is identical in reasoning as well as in result, but identity of result is in itself no mean argument for its justice."

The question here involved seems peculiarly to have engaged the attention of the bench and bar of the country. The problem has been scrutinized from every conceivable viewpoint. The arguments for and against have well nigh been exhausted, and little, if anything, new remains to be advanced. The doctrine now obtaining in this jurisdiction

is undeniably in harmony with the consensus of judicial thought upon the subject, and we are not disposed to change it. While the application of the rule to individual cases may sometimes seem harsh and the result regrettable, there are very few doctrines of the law of which the same may not be said with equal truth. When viewed in the light of a broader vision, however, we are convinced that the individual hardships wrought are offset many times over by the encouragement and stimulation which the rule of nonliability gives to the establishment and maintenance by private charity of institutions devoted to the care of the halt, the lame and the blind, and to the relief of those suffering from physical or mental disease and affliction.

The judgment will be affirmed.

ELLIS, C. J., PARKER, MAIN, and FULLERTON, JJ., concur.