[No. 14518.  Department One.  April 26, 1918.]

PAUL J. SUSMANN, *by his Guardian etc., Appellant*, v.
YOUNG MEN'S CHRISTIAN ASSOCIATION OF
SEATTLE, *Respondent*.[1]

CHARITIES—TORTS—LIABILITY. If a Young Men's Christian Association is a charitable or benevolent association, it is not liable for personal injuries sustained through the negligence of its servant in running a passenger elevator.

EVIDENCE—JUDICIAL NOTICE—Y. M. C. A. CHARITABLE PURPOSES. The courts cannot take judicial notice that an independent Young Men's Christian Association incorporated under the laws of this state is essentially a charitable and benevolent association within the rule of nonliability for negligence of its employees.

CHARITIES—TORTS OF SERVANTS—PLEADING—COMPLAINT. A complaint for personal injuries fails to show that a Young Men's Christian Association is a charitable and benevolent association within the rule of nonliability for the negligence of its employees, where, though its articles indicated design for charitable purposes, it is alleged that charges were made for benefits and privileges equal in amount to charges made by institutions operated for gain, and it was not shown that it had no capital stock or that all or any considerable part of its gains were applied to charity.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered June 2, 1917, upon sustaining a demurrer to the complaint, dismissing an action for personal injuries sustained through the operation of a passenger elevator. Reversed.

[1]Reported in 172 Pac. 554.

*Walter S. Fulton* and *Arch F. Williams*, for appellant.

*J. Speed Smith, Henry Elliott, Jr.*, and *James B. Murphy*, for respondent.

FULLERTON, J.—The appellant, a student and patron of the respondent, Young Men's Christian Association, sought to recover in damages from the respondent for injuries sustained because of the negligent operation of a passenger elevator in the association's building by one of its employees. A demurrer was interposed to the complaint, which the trial court sustained. The appellant elected to stand on his complaint, and appeals from the judgment of dismissal which followed.

The complaint, omitting the formal parts, is as follows:

"(1)    That plaintiff is a resident of Seattle, King county, Washington, and is of the age of thirteen years; that heretofore Mary B. Martin, who is plaintiff's mother, and is also a resident of Seattle, Washington, was duly and regularly appointed by the above entitled court, guardian *ad litem* of plaintiff for the purpose of commencing and prosecuting this action, and she is now the duly appointed, qualified and acting guardian *ad litem* of plaintiff for such purpose.

"(2)    That the defendant is a corporation duly organized and existing under and by virtue of the laws of the state of Washington, with its principal place of business in Seattle, King county, Washington, and its articles of incorporation provide *inter alia* as follows:

" 'Section 3.    The object of the corporation shall be the improvement of the spiritual, mental, social and physical condition of the young men of Seattle by the support and maintenance of lectures, Gospel services, libraries, reading rooms, gymnasiums, recreation grounds etc., social meetings and such other means as may conduce to the accomplishment of this object.

" 'The board of trustees shall devote the property of the association, of which they have the management

and the income thereof to the purposes named herein and for no other, and so long as the board of directors shall so expend the same, the board of trustees shall pay over to them the income of the property of the association so managed by them.'

"(3)   That in the prosecution of its business the defendant owns that certain brick building known as the Y. M. C. A. building, located at the southwest corner of Madison street and Fourth avenue in Seattle; that in said building the defendant maintains gymnasium rooms, a social hall, and reading rooms, an educational department with offices and class rooms, a laboratory, machine shop, library, a lobby, an auditorium, a boys' department with offices, a cafeteria, barber shop, shower and steam baths, swimming pool and sleeping rooms for rent, and in connection with its educational department said defendant maintains in said building a school in which general branches are taught and instruction in bookkeeping, typewriting, stenography and other special courses is given, and for instruction in said branches and courses, charges are made to persons taking or receiving the benefit thereof, said charges equalling in amount the prices charged for like instruction by business colleges and other schools in the city of Seattle which give instruction for profit, and for services and privileges in said barber shop, cafeteria, gymnasium and baths, and for the use of said sleeping rooms, charges are made which equal in amount the prices charged for like services, privileges and rooms by other concerns in the city of Seattle organized and operated for profit.

"(4)   That on the 23rd day of June, 1916, plaintiff, Paul J. Susmann, was a pupil in the school of defendant, and, through his mother, had paid to the defendant the tuition charges required by it for plaintiff's instruction.

"(5)   That on said day and at about the hour of 8:25 o'clock a. m., plaintiff was on the third floor of defendant's said building desirous of proceeding to his class room on an upper floor and for the purpose of being transported to his class room, he signalled for the passenger elevator maintained and operated by

the defendant in said building, and in pursuance of plaintiff's signal, said elevator then and there operated by an employe and agent of the defendant came from the lower floor and stopped at the level of the third floor for the purpose of receiving plaintiff as a passenger; that as plaintiff was in the act of entering the elevator and before he had time to enter it, the operator thereof negligently and carelessly and without notice or warning to him and with the door of the elevator shaft open, caused the elevator to leave the level of said floor and thereby the plaintiff was thrown upon the edge of the elevator floor and was carried several feet above the level of the third floor, when, being unable to retain his position, plaintiff was forced to relinquish the same and thereby fell four stories and into the basement of the building, a distance of approximately sixty feet, thereby receiving injuries as hereinafter more specifically set forth.

"(6)   That the fall of plaintiff and his injuries were due to the negligence and carelessness of the defendant, in that the defendant, at the time of plaintiff's injuries and for a long time previous thereto, had maintained said elevator in a condition violative of section 667 of Ordinance No. 31578 of the city of Seattle, approved July 22nd, 1913, providing as follows: Every door and gate to an elevator shaft shall always be closed when the elevator leaves the level of the floor or be so designed that the elevator cannot be started until they are closed.' And violative of ordinance No. 24761 of the city of Seattle, approved August 2, 1910, containing the same provision, which was superseded by said ordinance No. 31578, in this, that the door to the elevator shaft on the third floor of defendant's said building was so constructed and maintained that it could not be closed as the elevator left the level of the floor, or at all, and was not so designed as to prevent the elevator from being started until it was closed; that the fall of plaintiff was due to the further negligence and carelessness of the defendant in that the operator of said elevator failed and neglected to stop the elevator at the level of said floor a sufficient length of time to enable the plaintiff to enter

the same, but on the contrary, started the elevator as the plaintiff was in the act of entering it and before he had time safely to enter, with the result that plaintiff was thrown and was compelled to hang on to the edge of the floor of said elevator in an attempt to save himself from being dropped down the elevator shaft which was unguarded and unprotected, and thereby he fell as hereinbefore alleged.

"(7) That as a result of said fall, plaintiff, who previously was strong physically and mentally, was knocked unconscious, in which condition he remained for a period of three weeks, during which time he was confined to the Seattle General Hospital, and thereafter he was taken to his home and confined to his bed under medical care; that both his arms were broken, and his right arm was dislocated at the elbow, his left arm was broken at the wrist, his left hand was bruised and permanently stiffened, thereby deforming the same, a piece of the bone of plaintiff's left wrist was broken off and the wrist permanently stiffened; that plaintiff's skull was fractured at the base of the brain, and he sustained permanent internal injuries of a nature unknown to the plaintiff, but which have caused plaintiff much suffering in body and mind; that due to the fracture of plaintiff's skull atrophy of the optic nerve has occurred and plaintiff has but three-tenths of his normal vision, which condition is permanent and progressive, and, as plaintiff believes and alleges the fact to be, will result in total blindness; that as a further result of said fall plaintiff's right side was paralyzed for several days and he sustained abrasions about the limbs and an abrasion and cut under the right eye, and, due to his injuries, plaintiff's mind has been affected in that while he is thirteen years of age, he has not the mental capacity of a child above five or six years, and plaintiff is informed and believes and alleges the fact to be that this condition is permanent; that as a further result of plaintiff's injuries he has had to incur an indebtedness for hospital attendance in the sum of $188, an indebtedness for nursing in the sum of $162, and an indebtedness for doctor's bills in the sum of $600, and will be compelled to incur a fur-

ther indebtedness for medical attendance due to his injuries in the sum of $200.

"(8)   That in all, plaintiff has been and is damaged, as a result of his injuries due to the negligence and carelessness of the defendant as herein alleged, in the sum of thirty-five thousand dollars.

"(9)   That at the time of said accident defendant carried an elevator liability policy of insurance in the Aetna Insurance Company, whereby in consideration of a certain premium which had theretofore been paid by defendant, said Aetna Insurance Company agreed that if any person or persons should sustain bodily injuries, while entering upon or alighting from said elevator, as plaintiff was injured, said Aetna Insurance Company would indemnify defendant against liability on account thereof up to an amount not exceeding five thousand dollars; that subsequent to plaintiff's injuries and prior to the commencement of this action, the claim of plaintiff was referred by defendant to said Aetna Insurance Company and was investigated by the attorney for said Aetna Insurance Company; that since the commencement of this action, defendant has been represented in this action by an attorney employed by said Aetna Insurance Company, and if a judgment is recovered against defendant in this action, it will be paid to the extent of the liability of said Aetna Insurance Company under said policy of insurance."

The trial court sustained the demurrer on the ground that the respondent is maintained as a benevolent and charitable institution, and as such is not liable for torts committed by its servants against a patron of the institution, in the absence of a showing that it failed to exercise reasonable care in the selection of the servant. The rule applied by the court is the settled rule in this state, and if it appears from the complaint that the respondent is a benevolent and charitable institution, the demurrer was properly sustained. *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235; *Magnuson v. Swedish Hospital*, 99 Wash. 399, 169 Pac. 828.

It may be conceded, we think, that the purposes for which this corporation is organized are, in the wider sense, benevolent and charitable. Benevolence and charity do not consist wholly of almsgiving. While to relieve the wants of the helpless, the needy, or the indigent is charity, it is not the only form of charity. To engage in the work of improving the spiritual, mental, social and physical condition of young men by the maintenance of lectures, gospel services, libraries, reading rooms, gymnasiums, recreation grounds, social meetings, and such other things as may conduce to these objects so that the beneficiaries may not become helpless, needy, or indigent, is more to the purpose and is, when done gratuitously, perhaps the purest form of charity. But it is not charity in the legal sense to do these things for the purposes of gain, profit, or private advantage, or in the anticipation of gain, profit, or private advantage.

The term "charity" in itself implies gift in some form; it implies the bestowal of goods or money, the rendition of services, or the awarding of privileges, free to the recipient, without gainful return or the anticipation of gainful return to the donors. Hence it is not charity in a legal, or in any sense, to confer benefits which would be charitable if done without gain or the anticipation of gain, when the recipient, in order to receive the benefits, is required to return an adequate consideration. In other words, a charitable corporation to be such must not only engage in works tending to the betterment of mankind, but it must do so as a charity. If it renders no services except those for which it receives an adequate reward it is a business, not a charitable concern, and cannot claim the immunities of the latter. This is not to say that it has not the character of a charitable institution merely because it may exact compensation from those desir-

ing its privileges to the extent of their ability to pay. It is but to say that it is not a charity if it does no charity—if its privileges are extended to those only who have the ability and willingness to pay full value for the privileges afforded.

Whether the respondent is or is not a charitable association, as the question is now presented to us, must be determined from the allegations of the complaint. The respondent contends that we may take judicial notice of the objects and purposes of such associations, and may know judicially that they are essentially benevolent and charitable. But this is true only to a limited extent. We may know historically that the association originally founded under the name of Young Men's Christian Association was essentially charitable, but we cannot know judicially that the many independent organizations now existing under the same name are so. The particular association is an incorporation under the laws of this state, and its powers and privileges are such as the state laws confer upon it and permit it to assume in its articles of incorporation. We have, it is true, laws permitting the incorporation of purely charitable associations, but we have laws also which permit incorporation for business purposes, and whether this one is so incorporated or not depends upon its articles of incorporation and the manner in which it conducts its business thereunder, not upon the general character of the original institution whose name it bears.

Turning to the complaint, it is at once apparent that it does not there appear to be a charitable association under the legal meaning of that term. While its purposes as defined in its articles of incorporation are designed and adapted to the accomplishment of charitable purposes, it is not shown that it pursues them as a charity. On the contrary, the allegation is that, for

the services rendered, charges are made to the recipients of its benefits and privileges equal in amount to charges made for like benefits and privileges furnished by other institutions ostensibly operated for gain and profit. Nor is it shown that it has no capital stock, nor that the incorporators or members can derive no profit from the conduct of the business of the association, nor does it appear that its gains, as was shown in the case of *Magnuson v. Swedish Hospital,* are all, or in any considerable part, applied to the maintenance of the association or in the furtherance of its purposes and designs.

We attach no particular importance to the allegation that the duty violated resulting in the injury was expressly imposed by an ordinance of the city of Seattle, nor to the allegation that the respondent had procured indemnity insurance upon its elevator. A statute or ordinance, it is true, may create a liability where none before existed, but to accomplish that purpose it must be designed to that end. Here there is nothing to indicate that the municipal authorities enacting the ordinance intended thereby to create a liability against charitable institutions otherwise exempt from liability, and without some such express or implied intent none can be presumed to exist. The taking of indemnity insurance was but the exercise of business prudence. At any rate it could create no liability where none before existed, however much it might weigh as evidence of the construction the corporation placed upon its limitations and powers.

It will not be understood that we hold, even for the purposes of the particular case, that the respondent is not a charitable corporation. What we hold is that it does not so appear from the allegations of the complaint. The allegations of the complaint are, of course,

disputable, but we are clear that they are sufficient to require the respondent to answer.

The judgment is reversed, and the case remanded for further proceedings in the court below.

ELLIS, C. J., PARKER, MAIN, and WEBSTER, JJ., concur.