Johnson, J.
The undisputed evidence showed, and the trial court charged the jury, that the hospital of the defendant is a public charitable hospital; that it has no capital stock; that it cannot obtain profits from the use of the funds in its hands and whatever increase comes to the fund belongs to it and must be used for the purpose of the fund. The court also charged the jury that being a public charitable institution it was not liable under the law for the negligence of its servants or agents if it had exercised ordinary care in employing and keeping such servants and agents.
The charge of the court also contained the following :
*66 “In addition to proving that the defendant was negligent in this matter that he charges, in the selection and keeping of this servant and the proof of her incompetency and carelessness, which the plaintiff must prove, the plaintiff must also prove that such negligence of the corporation, either in receiving and installing her as a student nurse, or in keeping her after they found, or should have found in the exercise of ordinary care, she was incompetent, plaintiff must prove in addition that such negligence on the part of the defendant was the direct and proximate cause of the injury which plaintiff complains of.”
It does not appear that the court of appeals found that the verdict was against the weight of the evidence.
This court must accept the verdict of the jury as conclusive upon the questions of fact which remained in dispute. The decisive question in the case, therefore, is whether a public charitable hospital corporation is liable for the negligent and careless acts of an incompetent nurse in its employ when the hospital failed to exercise ordinary care in the selection and retention of such incompetent and careless nurse in its employ.
The liability of public charitable hospitals for the negligence and wrongful acts of employes has been considered in many of the courts in this country and in England and this has resulted in the expression of widely divergent views. In some instances, different conclusions have been arrived at in the same jurisdiction under various circumstances. Courts have differed in the method of reasoning as well as upon the grounds upon which they have’ arrived at their conclusions. Some courts have held that as *67 funds are donated for the specific object of the beneficence they constitute a trust and cannot be diverted to the payment of judgments for torts. Others have regarded the acceptance by the patient of the benefit of the charity as a waiver of claim for neglect. But the most generally accepted theory is that it is against public policy to hold the charity liable for negligence of servants where they have been selected with care.
The exact question involved in this case has never before been presented to this court.
In Taylor, Admr., v. Protestant Hospital Assn., 85 Ohio St., 90, it was held that ‘ ‘ The fact that a public charitable hospital receives pay from a patient for lodging and care does not affect its character as a charitable institution, nor its rights or liabilities as such in relation to such a patient,” and that “A public charitable hospital organized as such and open to all persons although conducted under private management is not liable for injuries to a patient of the hospital resulting from the negligence of a nurse employed by it.”
In that case the question whether the hospital would be liable for negligence in the selection and retention of an incompetent nurse was not present. The contention of counsel for the hospital in its brief in that case was that the defendant in error being a charitable corporation, and operating a charitable hospital at the time, was not answerable for the negligence of its employes, and that its only liability was for the selection of its employes with reasonable care. And in the opinion of the court it is said that the hospital contended “that being a charitable corporation operating a charitable hos *68 pital it was not liable for the negligence of its employes if such employes were selected with reasonable care.”
Among the cases examined and cited in the opinion in the Taylor case is McDonald v. Mass. General Hospital, 120 Mass., 432, and the following language from that case is quoted: “If, however, any contract can be inferred from the relation of the parties, it can be only on the part of the corporation that it shall use due and reasonable care in the selection of its agents. * * * The liability of the defendant corporation can extend no further than this; if there has been no neglect on the part of those who administered the trust and control its management, and if due care has been used by them in the selection of their inferior agents, * * * it cannot he made responsible.”
Hearns v. Waterbury Hospital, 66 Conn., 98, was another case cited with approval in the Taylor case, supra, and it is there said “in this case there is a very full discussion of English and American cases touching the question and the conclusion arrived at was that the hospital corporation was not liable, on grounds of public policy, for injuries caused by personal neglect of duty by a servant whom it has selected with due care.”
The extreme view of absolute exemption from liability has been upheld in Roosen, Admr., v. Peter Bent Brigham Hospital, 126 N. E. Rep., 392 (235 Mass., 66), decided in February, 1920, where the supreme court of Massachusetts held that “A public charitable hospital is not liable for negligence of its managers in selecting incompetent subordinate agents any more than it is for the negligence of subordinate agents selected with care.”
*69 It will thus be seen that the Massachusetts supreme court has now adopted the principle of complete exemption from liability of such institutions. A similar holding was made in Adams v. University Hospital, 122 Mo.. App., 675; and in Fire Insurance Patrol v. Boyd, 120 Pa., 624, it was held that “When a public corporation has no property or funds but what have been contributed for a special, charitable purpose, it would be against all law and all equity to apply the trust funds thus contributed, to compensate injuries inflicted by the negligence of its agents and servants.” And substantially the same principle has been declared in Abston v. Waldon Academy, 118 Tenn., 24; Gamble v. Vanderbilt University, 138 Tenn., 616; Vermillion v. Woman’s College of Due West, 104 S. C., 197; Downes, Admx., v. Harper Hospital, 101 Mich., 555, and Parks v. Northwestern University, 218 Ill., 381.
On the other hand, as above stated, many courts have adopted a different rule.
In Goodman v. Brooklyn Hebrew Orphan Asylum, 165 N. Y. Supp., 949, it is held that ‘ ‘ The general principle protecting charitable institutions from actions for negligence does not include negligence that results in the choice of incompetent, unskillful, or careless servants.” This affirmative holding that the hospital is liable for negligence in the choice of incompetent servants has been followed in St. Paul’s Sanitarium v. Williamson, 164 S. W. Rep. (Tex.), 36, and in Magnuson v. Swedish Hospital, 99 Wash., 399; Hillyer v. Governors of St. Bartholomew’s Hospital, L. R. (1909), 2 K. B., 820; Glavin v. Rhode Island Hospital, 12 R. I., 411; Ill. Cent. Ry. Co. v. Buchanan, 126 Ky., 288; Basabo v. Salvation Army, 35 R. I., 22; McInerny v. St. Luke’s Hos *70 pital Assn. of Duluth, 122 Minn., 10, and Hewett v. Woman's Hospital Aid Assn., 73 N. H., 556.
And the rule respondeat superior has been applied in its rigid form in Tucker v. Mobile Infirmary Association, 191 Ala., 572, 592.
In 13 Ruling Case Law, 945, in discussing the ground of public policy upon which the decisions of some courts have been placed, it is said: “In answer to this argument, however, it has been said that while the public has an interest in the maintenance of a great public charity, it also has an interest in obliging every person and corporation which undertakes the performance of a duty to perform it carefully, and to that extent therefore it has an interest against exempting any person and any such corporation from liability for its negligence, and that moreover it is solely for the legislature, and not for the courts to say that the former interest is so supreme that the latter must be sacrificed to it.”
In Magnuson v. Swedish Hospital, 169 Pac. Rep., 828 (99 Wash., 399), it is said: “Incorporated hospital having no stock, organized to treat sick persons and authorized to perform gratuitous services, and also to exact fees from persons capable of paying, is liable, when a patient is injured by the negligence of a nurse, only for its own negligence, if any, in hiring the nurse.” In Hillyer v. Governors of St. Bartholomew’s Hospital, L. R. (1909), 2 K. B., 820, 9 British Ruling Cases, 1, Lord Kennedy states the rule thus: “The governors of a public hospital, by the admission of the patient to enjoy in the hospital the gratuitous benefit of its care, do, I think, undertake that the patient whilst there shall be *71 treated only by experts, whether surgeons, physicians or nurses, of whose professional competence the governors have taken reasonable care to assure themselves.” And in McInerny v. St. Luke’s Hospital Assn., 122 Minn., 10, it is declared that “The requirement of reasonable care in the selection of servants is a personal non-delegable duty of the master, * * *. In fact, it seems clear, under the modem trend of judicial opinion, that a failure to discharge any non-delegable duty creates, in the absence of express statutory exemption, a liability on the part of associations of this kind. ’
In Hoke v. Glenn, 167 N. C., 594, it is said: “The beneficiaries of charitable institutions are the poor, who have very little opportunity for selection, and it is the purpose of the founders to give to them skillful and humane treatment. If they are permitted to employ those who are incompetent and unskilled, funds bestowed for beneficence are diverted from their true purpose, and, under the form of a charity, they become a menace to those for whose benefit they are established.”
As we have said, in some cases there has been a disposition to entertain the view that the hospital is exempt from liability on the theory that the patient having accepted the benefits of the hospital is held to have waived his right to bring action against it to recover for negligence of its servants.
In 13 Euling Case Law, 948, Section 11, it is said as to this: “It is to be observed that in most of the cases applying the doctrine of immunity by waiver, the rale is qualified, so that even in the ease of patients liability may exist if there has been a failure on the part of the hospital to exercise care in the *72 selection of its agents. ’ ’ And in Thomas v. German General Benevolent Society, 168 Cal., 183, it is said: “When one accepts the benefit of a public or of á private charity, he exempts, by implied contract, the benefactor from liability for the negligence of the servants in administering the charity, if. the benefactor has used due care in the selection of those servants. ’ ’
In Powers v. Mass. Homeopathic Hospital, 109 Fed. Rep., 294, it is declared that “A patient in a public hospital * * * cannot recover from such corporation for injuries resulting from the negligence of a nurse employed in its hospital, and in whose selection due care was used; there being an implied agreement arising from the acceptance by the patient of the corporation’s bounty that it shall not be liable for the acts of such servants in administering the charity.”
This general proposition that charitable hospitals are not liable to their patients for negligence of their employes selected with due care is held in Morrison v. Henke, 165 Wis., 166; Corbett v. St. Vincent’s Industrial School of Utica, 79 N. Y. Supp., 369; Van Tassell v. Manhattan Eye & Ear Hospital, 15 N. Y. Supp., 620; Kellogg v. Church Charity Foundation of Long Island, 128 N. Y. App. Div., 214; Gitzhoffen v. Sisters of Holy Cross Hospital Assn., 32 Utah, 46; Eighmy v. Union Pac. Ry. Co., 93 Iowa, 538, and 15 Am. & Eng. Ency. of Law, 763.
The defendant in error in this case points out that in many of the decisions which recognize the principle contended for by the plaintiff in error the courts do so by inference; that is to say, by embodying in their opinions the statement that the hospital *73 would not be liable for the negligence or incompetence of servants who had been selected with reasonable care..
This is true, but it must be remembered that the hospitals are in the contested cases asserting an exemption from the general rule respondeat superior. That doctrine itself had its origin in considerations of public policy. It doubtless will be in the future, as it always has been, developed, modified or extended as the necessities of new social and economic conditions demand. And the exemption from liability of such organizations, subject to the condition of care in the selection and the retention of servants, which condition is so frequently found in the decisions of courts on the subject, indicates the general judgment that the exemption from the operations of the rule respondeat superior, which experience has shown to be a valuable aid in securing the ends of justice, should not be sweeping and complete, but should be surrounded by such safeguards as will prevent, the neglect of a duty which the hospital can and should perform. It cannot watch or control the countless acts and movements of its servants, but it can and should exercise care to see that only careful and competent servants minister to stricken patients who are within its walls. Moreover, while it may well be said that donors of funds for the praiseworthy objects of charitable hospitals do not contemplate the diversion of the fund for the payment of damages for the numerous acts of servants referred to, yet they necessarily realize and appreciate that they give their donation to those who have the management and control of the institution, and that every principle of justice requires that they use *74 care in the development and maintenance of the property and in the selection of servants who have the oversight of patients.
In our day there is a general tendency in all persons to resort to hospitals in cases which require surgical operations, or in cases of severe sickness, and for obvious reasons it is desirable that such an institution should not be held out as devoted solely either to the poor or to the rich, and the degree of care required should in all cases be the same. The same rule should apply to a pay patient as to one who does not pay, and there is general agreement on this proposition.
As has been seen from the references to the decided cases, the decisions of courts are irreconcilable, either as to the conclusions arrived at or the reasons given by different courts for the same conclusion. However, we are convinced that sound reasons sustain the great weight of authority to the effect that a public charity should not be held liable for the negligence of the servant in whose selection the hospital and its managers have exercised due care.
On the other hand, such an institution is liable when it fails to exercise such care.
The judgment of the court of appeals will be reversed and that of the common pleas affirmed.

Judgment reversed.

Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.