[No. 19356. Department Two. January 12, 1926.]

HARRY P. TRIBBLE, *Respondent*, v. MISSIONARY SISTERS OF THE SACRED HEART, *Appellant.*[1]

[1] CHARITIES (9)—LIABILITY OF CHARITABLE SOCIETY FOR TORTS—EFFECT OF EXACTING COMPENSATION. The fact that a hospital receives or exacts compensation from patients to the extent of their ability to pay does not necessarily deprive it of its character as a charitable one.

[2] CHARITIES (9)—LIABILITY FOR TORTS—DUE CARE IN SELECTION OF EMPLOYEES. A hospital maintained as a charitable institution is liable to a patron injured through want of reasonable care in selecting its attendants.

[3] SAME (9). Whether the supervisor of nurses in a hospital used due care in the selection of attendants, and the weight and

[1]Reported in 242 Pac. 372.

credibility of the witnesses, are for the jury, where it appears
that an unconscious patient was placed in a bed and burned by a
hot water bottle, left there by a "probationer" who, without any
previous experience, was accepted without any personal inter-
view or tests, and kept a month without being seen by the one
who selected her, and was shortly after discharged for mis-
conduct.

[4] APPEAL AND ERROR (443)—HARMLESS ERROR—CONDUCT OF TRIAL.
Prejudicial error cannot be assigned upon improper conduct of a
witness in voluntarily persisting in referring to an offer of com-
promise, where it was not invited by counsel, and the court
instructed the jury to disregard it.

[5] APPEAL AND ERROR (445)—HARMLESS ERROR—CONDUCT OF COUN-
SEL. Prejudicial error cannot be based upon misconduct of
counsel, in a personal injury case, in asking about indemnity
insurance carried by the defendant, where it appears to have
been in good faith, and the court sustained an objection, and in-
structed the jury not to consider it (TOLMAN, C. J., dissenting).

Appeal from a judgment of the superior court for
King county, Abel, J., entered February 9, 1925, upon
the verdict of a jury rendered in favor of the plaintiff
in an action for personal injuries. Affirmed.

*John L. Corrigan, J. Speed Smith,* and *Henry Elliott,
Jr.,* for appellant.

*Jas. A. Dougan,* for respondent.

MITCHELL, J.—Harry Tribble, for a consideration
paid by him, became a patient at the Columbus Sani-
tarium, a hospital operated by the defendant, the
Missionary Sisters of the Sacred Heart, a corporation,
at Seattle. After an operation in the surgery, and
while still under the influence of an anesthetic, he was
taken to his room and placed in bed. His attendant or
attendants neglected to remove an aluminum bottle of
hot water that had been placed in the bed, and which in
a short time severely burned and injured him. He
sued the defendant, alleging negligence in its care of
him and negligence in the selection and retention of

the person assigned to take care of him. From a judgment on the verdict of a jury in his favor, the defendant has appealed.

It appears that the hospital had what were called probationers (student nurses, or those in training to become graduate nurses), and graduate nurses. In short, the testimony of the respondent shows that one Corinne Meiklebust, who it appears was a probationer, about the time respondent regained consciousness, discovered that the bottle of hot water had been left in the bed, and on taking it out exclaimed that she had forgotten to take it out, and that later on, the same day, upon observing the extent of the injuries caused by the bottle of hot water, she remarked that she would "get the devil for that." On the contrary, one Katherine E. Simons, at the time of the injury not a graduate but a student nurse, testified that, when the respondent was put in his bed, she removed two bottles of hot water, but did not know another one had been left in the bed; that she did not know who put the bottles in the bed; and that Miss Meiklebust, though connected with the hospital at that time, was not in the room when respondent was taken back to it. Of course, this dispute of fact as to who was respondent's attendant was for the jury.

[1] The contention of the appellant is that the evidence was insufficient to take the case to the jury. It is said in the brief:

"This contention is based upon the following premises: First, the hospital is owned and operated by the appellant as a charitable institution; second, appellant is not responsible for injuries to its patients unless same are shown to be caused by want of due care in the selection of competent servants; third, that there is no evidence in this case to show that appellant failed to use due care in the selection of competent servants."

Though the point was strongly at issue in the pleadings and in the trial of the case, we are disposed to the view, upon consideration of all the proof, that the hospital was maintained and operated as a charitable institution. Merely because an institution receives or exacts compensation from those desiring its privileges to the extent of their ability to pay does not necessarily deprive the institution of its character as a charitable one. *Susman v. Young Men's Christian Association*, 101 Wash. 487, 172 Pac. 554.

[2] The other two branches of the contention of the appellant as above stated are closely related; that is, non-liability unless want of due care is shown in the selection of servants, and that there is no evidence in this case to show that the appellant failed to exercise due care in the selection of competent servants.

Notwithstanding the plain statement of counsel for appellant as to their contention quoted above and the further statement in their brief that "the appellant cannot be held liable unless it is shown that it failed to use due care in the selection of a competent servant," the argument is made, more fully in the reply brief, that a charitable institution is not liable for the negligence of its officers and managers in failing to exercise due care in the selection of its servants. Some cases are cited to that effect. However, we need not go beyond our own cases. In *Susman v. Young Men's Christian Association, supra,* the complaint was tested by a general demurrer. It contained no allegation of negligence on the part of the defendant in the selection of its servant. We said:

"The trial court sustained the demurrer on the ground that the respondent is maintained as a benevolent and charitable institution, and as such is not liable for torts committed by its servants against a patron of the institution, in the absence of a showing that it

failed to exercise reasonable care in the selection of the servant. The rule applied by the court is the settled rule in this state, and if it appears from the complaint that the respondent .is a benevolent and charitable institution, the demurrer was properly sustained. *Wharton v. Warner,* 75 Wash. 470, 135 Pac. 235; *Magnuson v. Swedish Hospital,* 99 Wash. 399, 169 Pac. 828."

In the *Wharton v. Warner* case, 75 Wash. 470, 135 Pac. 235, it was decided (syllabus):

"A charitable hospital incorporated to found a medical and charitable sanitarium to care for indigent and other sick persons, is not liable for the negligence of its physician, where it exercised reasonable care in selecting him."

In *Magnuson v. Swedish Hospital,* 99 Wash. 399, 169 Pac. 828, upon referring to the case of *Richardson v. Carbon Hill Coal Co.,* 10 Wash. 648, 39 Pac. 95, it was said:

"We there held that the corporation was a charitable institution so far as the hospital feature was concerned, and, even though the company did employ the physician to care for and treat the sick and injured workmen, it was not liable for his negligence, but was responsible only for want of ordinary care in selecting him. This doctrine was reaffirmed in the case of *Wells v. Ferry-Baker Lumber Co.,* 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426."

[3] With regard to the question of the care exercised by the appellant in procuring Miss Meiklebust as a servant, the testimony shows substantially the following: One, Sister Assumption, still connected with the appellant at the time of the trial, had charge, as supervisor of nurses, of the selection of Miss Meiklebust when she was taken into the service of the hospital. She testified that, on selecting her she found her of good character and capable of taking responsibility.

She admitted that she got the information of her good character in writing signed by two persons. The writing, mentioning only her good character, was from references furnished on a written application made by Miss Meiklebust. The application was made about a month before the commencement of services, during which time she did not see the applicant. She could not remember the names of the references. Miss Meiklebust was nineteen years of age and a stranger to her and had no former experience in caring for the sick that the witness knew of. She did not give the girl any mental tests. Shortly after the accident complained of, the girl was discharged for outside misconduct and the application blank and letters of reference were returned to one supposed to be the girl's mother. She could not remember who the letters of recommendation were from, nor whether she knew either of them, and that the receipt of such letters of recommendation is somewhat of a formality.

Respective counsel have called our attention to a large number of cases which, though examined, cannot reasonably be reviewed herein. We mention, however, the case of *St. Paul's Sanitarium v. Williamson*, 164 S. W. (Tex. Civ. App.) 36, because the facts in that case are rather similar to the facts in the present one. That case discusses several of the propositions involved in the present one and exhaustively reviews the authorities. In that case a patient, while under the influence of an anesthetic, was placed in bed after an operation and was injured by a bottle of hot water. It had been placed in the bed by a girl attendant of the hospital by the direction of a superior. The nurse who placed the patient in bed made no examination to ascertain whether the bottle of hot water was in a safe position. This nurse was not a graduate but a pupil. It was further shown that this nurse was almost im-

mediately succeeded by another, and that she made no examination of the bed to ascertain if the patient was in a safe position with reference to the bottle of hot water. This nurse was also not a graduate, but a pupil nurse. Upon reading the whole case, it appears that, principally upon these facts, it was held that the jury was entitled to find that ordinary care had not been observed by the sanitarium authorities in the selection of its servants.

Ordinary care in the selection of servants implies and demands that degree of diligence and precaution which the exigencies of the particular service reasonably require. Admitting the purpose and advisability of using one or more bottles of hot water to increase the lowered circulation of a patient due to an operation, it is nevertheless highly important that a bottle of hot water capable of doing harm should not be left in such position in the bed that a patient may be injured by it. The situation requires more care if the patient is unconscious.

Counsel for appellant says, however, that respondent's views and theory are based upon the girl's exclamations and admissions and are unworthy of belief, in view of the testimony of Miss Simons that she herself had charge of the respondent immediately after the operation. But her own testimony shows that she was only a pupil nurse and that she neglected, also, to remove the hot water bottle that caused the injury. Miss Meiklebust did not testify nor was her absence explained. These were all matters for the jury. So, also, as to the testimony of the officer of the appellant who employed the servants. She alone had charge of and performed that duty and in the very nature of her testimony it was in many important particulars, if not generally, incapable of contradiction. She was, of

course, an interested witness. The weight and credibility of such evidence is for the jury. *Gosline v. Dryfoos,* 45 Wash. 396, 88 Pac. 634; *Purdy v. Sherman,* 74 Wash. 309, 133 Pac. 440; *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648; *Vernarelli v. Sweikert,* 123 Wash. 694, 213 Pac. 482.

[4] Further complaint is made by the appellant because the wife of the respondent, while being examined in chief on behalf of the respondent, persisted somewhat in referring to a conversation in the nature of an offer of compromise on the part of one of the officers of the appellant. As we view the record in this respect, that course was not invited by counsel after proper objection, but voluntarily persisted in by the witness until warned by the court who fully and specifically instructed the jurors at that time to disregard it. There was in it no prejudice sufficient to warrant a reversal.

[5] Another assignment of error charges counsel for the respondent with improper conduct in asking one of the officers of the appellant corporation, among other things along the same line, what part of the funds of the institution were used to purchase indemnity insurance. Appellant relies in argument on *Schwalen v. Fuller & Co.,* 107 Wash. 476, 182 Pac. 592, 187 Pac. 366, 10 A. L. R. 296, and other like cases. But we think the purpose for the rule of those cases wholly lacking in the present one and the rule not applicable. As already stated, respondent was contending that the appellant was not a charitable institution, and in support of that contention was attempting to find out about its carrying indemnity insurance. In doing so, counsel relied on *Susman v. Young Men's Christian Association, supra,* and, as we understand the record, so stated to the trial court. In that case it was said:

"The taking of indemnity insurance was but the exercise of business prudence. At any rate it could create no liability where none before existed, however much it might weigh as evidence of the construction the corporation placed upon its limitations and powers."

The trial court, however, decided that the inquiry was objectionable, refused to allow the question to be answered, and at once instructed the jury to disregard the question not allowed to be answered and "not to consider that matter at all in considering the case." The correctness of the ruling on the question asked is in no way now involved, only the good faith of counsel in asking the question. Clearly there was nothing in the incident to indicate other than good faith on the part of counsel and, according to the views of the trial court concerning the controversy, the rights of appellant were protected by the court's immediate caution to the jury.

Affirmed.

MAIN, PARKER, and MACKINTOSH, JJ., concur.

TOLMAN, C. J. (dissenting)—While I agree with the rule announced as to the care required in the selection of employees, the evidence, as I construe it, was insufficient to take that question to the jury. I therefore dissent.