[No. 25114.   Department Two.   March 28, 1935.]

S. G. BISE *et al., Respondents,* v. ST. LUKE'S HOSPITAL, *Appellant.*[1]

*Cannon, McKevitt & Fraser* and *Hamblen, Gilbert & Brooke,* for appellant.

*Tustin & Chandler* and *Albert C. Bise,* for respondents.

[1]Reported in 43 P. (2d) 4.

GERAGHTY, J.—Plaintiffs, S. G. Bise and Maud Bise, his wife, sued the defendant corporation, St. Luke's Hospital, to recover damages for injuries sustained by the wife while a patient in its hospital. The cause was tried to a jury and a verdict returned in favor of plaintiffs. The defendant's motions, at the close of the case, for a directed verdict and, after verdict, for a judgment notwithstanding the verdict or, in the alternative, for a new trial, were denied and judgment entered. The defendant appeals.

The appellant assigns as error the denial of its several motions, as well as the giving and refusal by the court of certain instructions.

The respondent Maud Bise, who will hereafter be referred to as if sole respondent, became a patient in appellant's hospital for the purpose of undergoing an operation. After the operation, and while still unconscious from the effect of the anesthetic, she was removed to an ether bed, a bed prepared specially for the reception of patients immediately after operation. The bed was heated in advance with three hot water bottles. Martha Stanway, a student nurse in the hospital, was assigned to care for the respondent and to remove the hot water bottles from the bed. Two of the bottles were removed by the nurse, but the third, through her oversight, was left in the bed, resulting in a severe burn to respondent.

This act of negligence on the part of an employee of appellant would, if the hospital were one conducted for pecuniary profit, under the rule of *respondeat superior*, subject appellant to liability for the resulting injury. But it is an admitted fact in the case, and the jury was so charged by the trial court, that the appellant is a charitable institution, and as such, under the established rule in this state, it is not responsible in damages for the negligent act of an

employee, unless it is established that the appellant itself was negligent in failing to exercise ordinary care in the selection and retention of the employee. *Tribble v. Missionary Sisters of the Sacred Heart*, 137 Wash. 326, 242 Pac. 372; *Magnuson v. Swedish Hospital*, 99 Wash. 399, 169 Pac. 828; *Wharton v. Warner*, 75 Wash. 470, 135 Pac. 235; *Wells v. Ferry-Baker Lumber Co.*, 57 Wash. 658, 107 Pac. 869, 29 L. R. A. (N. S.) 426; *Richardson v. Carbon Hill Coal Co.*, 10 Wash. 648, 39 Pac. 95.

The appellant introduced oral testimony and documentary evidence tending to prove that it had established rules and standards for the admission of students into its training school for nurses, and that these rules and standards were followed in the selection and subsequent retention of Miss Stanway; that her progress in the training school had been satisfactory and had met the requirements of the school. She had been in training twenty-seven months at the time of respondent's injury, and graduated thereafter at the close of her three-year course of training and subsequently passed the state examination for nurses. Prior to her admission to the training school, in conformity with its rules, an investigation had been made by appellant with respect to her moral character, physical fitness, and intelligence. For the first three months after entering, she was on probation. During this period, she was given general instruction in the theory of nursing, with some practical work under an experienced supervisor. At the expiration of the three months' probationary work, having demonstrated her fitness and adaptability, she was accepted as a student nurse and thereafter assigned to such duties as the extent of her training qualified her to perform. Miss McArthur, superintendent of nurses at the time, testi-

fied as to Miss Stanway's progress in training and her fitness for the duties to which she was assigned.

As against this testimony, it appeared from the monthly efficiency reports of the training school kept by the hospital and introduced in evidence, that, from time to time, criticisms of Miss Stanway's progress were made. Respondent was admitted to the hospital in April, 1930. The report for May, 1928, recited "Either from lack of ability or lack of interest, her work is not what it could be," and in June of the same year, "A very hard girl to understand. I feel she can do much better work." In October of the same year, under the heading "Special faults," is noted "Must have very definite instructions. Slow to understand what is told her." In the report for September, 1929, under the heading "Power of observation," is noted "Poor—is not on the alert," and, under the heading "Special faults," "Disregards small details unless reminded frequently;" and in the following month, under the heading "Special faults," is the notation "Inclined to work on the surface unless supervised closely," and, under the heading "Remarks," "Miss Stanway is doing good work. She needs checking in regard to detail work and lacks initiative." In the report for March, 1930, under the heading "Special faults," is the notation "A little slow, lacks initiative."

From these reports, we have selected the most damaging criticisms. It is only fair to the nurse to say that there were other reports favorable to her, and as the monthly reports were made by various supervisors, the personal equation may have entered into the reports somewhat. But the damaging reports were there, and the jury was entitled to consider and weigh them in reaching its conclusion upon the question of appellant's care in assigning the nurse to so responsible a duty and one requiring so much attention

to detail as the preparation of a bed for the reception of unconscious patients and the removal of so dangerous an instrumentality as a hot water bottle. No technical qualifications were required to remove the hot water bottle from the bed, and one with little, or no, training, but possessing the power of observation and attention to detail, would be competent for the duty. But the power of observation and attention to detail are the qualities in which, it may be inferred from the reports, the nurse was deficient. The trial court properly refused the motions for directed verdict and for judgment *non obstante*.

The trial court, in its instruction No. 10, charged the jury that, under the evidence and as a matter of law, the appellant was a charitable institution operated for the care of sick and injured persons and not for profit, and as such was not liable for the negligence of its servants and employees, unless it was established to the satisfaction of the jury by a preponderance of the evidence that appellant was itself negligent in failing to exercise reasonable care in selecting and retaining the servants and employees whose negligence caused the injury. And in instruction No. 11, the jury was told that, even if it found that the nurse caring for the respondent was negligent in such manner as to cause the injury complained of, such negligence was not sufficient, in and of itself, to establish the appellant's negligence.

These instructions correctly stated the law. But in certain of its other instructions, particularly No. 5, the court gave the jury a conflicting and, we think, erroneous view of the law. In that instruction, the court told the jury that, if it found that

" . . . said plaintiff was under the care and custody of defendant's nurses or employees, and that said hot water bottle was under the management and control of defendant, its nurses and employees, and

that the injury, if any, sustained by said plaintiff, was such as in the ordinary course of things does not happen if those who have the management of the instrument causing the injury use ordinary care, then I instruct you that such a situation affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of ordinary care on the part of defendant in selecting and retaining said nurses or employees having the management and control of said hot water bottle at the time and under the conditions referred to in these instructions; and if you so find, you should find for the plaintiffs.''

In this instruction, the court applied the rule of *res ipsa loquitur* and informed the jury, contrary to instruction No. 11, that the neglect of the nurse raised the presumption that the appellant had failed to exercise ordinary care in her selection and retention. The instruction went further, and told the jury, not only that the presumption existed, but that it afforded reasonable evidence, in the absence of explanation, that the accident arose from want of ordinary care on the part of the appellant.

We think the instruction was erroneous both in instructing the jury that the presumption existed and in characterizing the presumption as evidence in the case, to be weighed with other evidence. As the court itself said in instruction No. 11, it does not necessarily follow that the nurse's act of negligence raises the presumption that the appellant was negligent in failing to exercise ordinary care in her selection and retention. The question before the jury was not the negligence of the employee—that was admitted—but the negligence of the employer in her selection and retention. From common experience, we know that even the most qualified and competent person may, in a moment of forgetfulness, or even in wantonness, do something amiss; and it would not be reasonable or logical to attach to this single negligent act of the em-

ployee the presumption that the employer was negligent in her employment.

In *Mikota v. Sisters of Mercy,* 183 Iowa 1378, 168 N. W. 219, it is said:

"If the case rested on the negligence of the defendant in the selection of incompetent servants, then it should appear affirmatively that the injury is traceable to such negligence. Even an incompetent servant may be negligent, and if the injury is traceable to such negligence, and not to the incompetency, then there is no liability under the rule hereinbefore stated."

To apply the rule of *res ipsa loquitur* in cases like the one before us would deprive charitable institutions of the benefit of the rule of exemption, and in effect make them liable generally for the negligence of their employees.

In support of her contention that the rule of *res ipsa loquitur* applied to the selection and retention of the nurse, the respondent cites *Adams v. University Hospital,* 122 Mo. App. 675, 99 S. W. 453. In that case, the court said that, if the defendant's liability was to be ascribed to the negligence of its nurse, the manner of the injury was such as to apply the rule of *res ipsa loquitur,* to be invoked not only as to the primary negligence, but as to the negligence of the hospital in selecting competent nurses. But the court in that case held that, under the rule of law in the state of Missouri, the hospital was not liable either for the negligence of its employees or its own negligence in their selection, so that its expression as to the application of the rule was pure dictum. While respondent cites this case in support of her contention, the case itself would be an authority against her right to recover in any event if that case were to be followed here in its entirety.

The case of *Meyer v. McNutt Hospital,* 173 Cal. 156,

159 Pac. 436, also cited, supports respondent's contention, but it cites only *Adams v. University Hospital, supra.* This is but tenuous authority in support of respondent's contention for an extension of the rule of *res ipsa loquitur.* It may be that, in establishing the primary negligence, in the absence of explanation, the rule could be invoked; but to extend the rule to the secondary question of care on the part of the hospital in the employment of the nurse would be to superimpose one presumption upon another. 20 R. C. L. p. 870, § 13.

But even if the presumption did exist, it was not evidence, and it was error to so charge the jury. *Scarpelli v. Washington Water Power Co.,* 63. Wash. 18, 114 Pac. 870; *Anning v. Rothschild & Co.,* 130 Wash. 232, 226 Pac. 1013; *McMullen v. Warren Motor Co.,* 174 Wash. 454, 25 P. (2d) 99.

In the last cited case, the trial court instructed the jury:

"You may take into consideration this admission, and the resulting presumption, together with all of the other facts and circumstances in the case, in determining whether or not, at the time and place of the collision, the said Dewey Rochester was engaged, in whole or in part, in the business of the Warren Motor Company."

Commenting upon this instruction, the court said:

"The instruction concluded with the statement that the presumption referred to was rebuttable, but the question as to whether Rochester was, at the time and place of the accident, engaged in the business of the appellant was one for the jury's determination. It will be observed that, in the quoted part of the instruction, the jury were told that they could take into consideration the 'presumption, together with all of the other facts and circumstances in the case,' in determining whether Rochester was engaged in the business of the appellant at the time of the accident.

"The instruction is technically erroneous, in that the jury could infer therefrom that the presumption could be treated as evidence, together with all the other facts and circumstances in the case, while the rule of law is, as above pointed out, that the presumption is not evidence. The presumption, however, was still in the case, because it had not been met by disinterested witnesses, and it should have been called to the jury's attention, not as evidence, but as a mere presumption or conclusion. Since the presumption would have been sufficient to take the case to the jury without other evidence on the part of the respondents, it does not appear to us that the instruction, while erroneous in the respect pointed out, was prejudicial. It only told the jury that they could take into consideration the presumption, together with all the other facts and circumstances, and only by inference could it be said that the presumption was called to the jury's attention as evidence.''

In the case at bar, the instructions specifically told the jury that the presumption afforded reasonable evidence of the fact in issue. The vice of this instruction is accentuated when read in connection with instruction No. 11, where the jury was told that the appellant was not liable unless it was established to the satisfaction of the jury, by a preponderance of the evidence in the case, that the appellant was itself negligent in failing to exercise reasonable care in the selection and retention of the nurse. These instructions charged the jury that it was to reach its verdict from the evidence in the case, and then that the presumption was evidence to be weighed with other evidence in arriving at its verdict.

For the reasons given, the judgment is reversed, and the cause remanded to the superior court with direction to grant a new trial.

TOLMAN, HOLCOMB, and BEALS, JJ., concur.

MILLARD, C. J., concurs in the result.