AMELIA HOKE ET AL. v. E. B. GLENN AND CLARENCE BARKER
MEMORIAL HOSPITAL.

(Filed 23 December, 1914.)

1. Pleadings—Interpretation—Cause of Action.

Under our Code system of pleading, actions should be tried upon their merits, construing every intendment in favor of the pleader; and a complaint may not be overthrown by demurrer if in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, however inartificially it may have been drawn, or uncertain, defective, or redundant may be its statements.

2. Same — Charitable Hospitals — Selection of Employees—Ordinary Care—Demurrer.

A hospital maintained for charitable purposes is liable in damages caused by its failure to use ordinary care in the selection of its employees, and where one who has been received as a patient therein alleges in his complaint, in an action to recover damages, that he has been injured by reason of the failure of the defendant to exercise the care required in this respect, a demurrer thereto on the ground that the complaint does not state facts sufficient to constitute a cause of action is bad.

HOKE, J., did not sit.

APPEAL by defendant from *Justice, J.*, at September Term, 1914, of HAYWOOD.

Action to recover damages, caused, as the plaintiff alleges, by the negligence of the defendants E. B. Glenn, a physician, and the Clarence Barker Memorial Hospital.

It appears from the complaint that plaintiff was the patient of the defendant Glenn, and that he placed her in the defendant hospital for treatment, where she was at the time of her injury.

The defendant, the Clarence Barker Memorial Hospital, filed a demurrer to the complaint, which was overruled, and it appealed.

*Smathers & Clark and Gilmer & Gilmer for plaintiff.*
*Harkins & Van Winkle for defendant hospital.*

ALLEN, J. It is the purpose of the Code system of pleading, which prevails with us, to have actions tried upon their merits, and to that end pleadings are construed liberally, every intendment is adopted in behalf of the pleader, and "a complaint cannot be overthrown by a demurrer unless it be wholly insufficient. If in any portion of it, or to any extent, it presents facts sufficient to constitute a cause of action, or if facts sufficient for that purpose can be fairly gathered from it, the pleading will stand, however inartificially it may have been drawn or however uncer-

tain, defective, or redundant may be its statements, for, contrary to the common-law rule, every reasonable intendment and presumption must be made in favor of the pleader. It must be fatally defective before it will be rejected as insufficient." *Brewer v. Wynne,* 154 N. C., 472.

Applying these principles to the pleadings, we are of opinion the demurrer was properly overruled, conceding that the defendant hospital is a charitable institution, and cannot, therefore, be held responsible for the negligent acts of its agents and employees, because the complaint alleges that the hospital, as a corporation, was negligent in that it failed to exercise ordinary care in the selection of its agents, and that the plaintiff was injured by this negligence, and these facts are admitted by the demurrer.

We had occasion at this term, in *Green v. Biggs, ante,* 417, to consider the liability of private hospitals, maintained for profit and gain, to persons committed to their care, and preliminary to the discussion stated as the result of our investigations that "The principle seems to be generally recognized that a private charitable institution, which has exercised due care in the selection of its employees, cannot be held liable for injuries resulting from their negligence, and the rule is not affected by the fact that some patients or beneficiaries of the institution contribute towards the expense of their care, where the amounts so received are not devoted to private gain, but more effectually to carry out the purposes of the charity."

The clear inference from this statement of the law is that there is liability if due care is not exercised in the selection of agents and employees, and this is in line with the weight of authority. *McDonald v. Hospital,* 120 Mass., 432; *Joel v. Woman's Hospital,* 96 N. Y., 74, and cases collected in note to *Duncan v. Hospital,* Anno. Cases, 1913 E.

The reasons assigned for the nonliability of charitable institutions for the negligent acts of their employees vary greatly, and are stated very fully in the note to *Parks v. Northwestern University,* 4 A. and E. Anno. Cases, 105, from which we quote: "In *Powers v. Massachusetts Homeopathic Hospital,* (C. C. A.) 109 Fed. Rep., 294, it was said: 'One who accepts the benefit either of a public or of a private charity enters into a relation which exempts his benefactor from liability for the negligence of his servants in administering the charity; at any rate, if the benefactor has used due care in selecting those servants. To paraphrase the illustration put by the learned judge before whom this case was tried, it would be intolerable that a good Samaritan, who takes to his home a wounded stranger for surgical care, should be held personally liable for the negligence of his servant in caring for that stranger. Were the heart and means of that Samaritan so large that he was able not only to provide for one wounded man, but to establish a hospital for the care of a

thousand, it would be no less intolerable that he should be held personally liable for the negligence of his servant in caring for any one of those thousand wounded men. We cannot perceive that the position of the defendant differs from the case supposed. The persons whose money has established this hospital are good Samaritans, perhaps giving less of personal devotion than did he, but, by combining their liberality, thus enabled to deal with suffering on a larger scale. If in their dealings with their property, appropriated to charity, they create a nuisance by themselves or by their servants; if they dig pitfalls in their grounds and the like, there are strong reasons for holding them liable to ·outsiders like any other individual or corporation. The purity of their aims may not justify their torts; but if a suffering man avails himself of their charity, he takes the risks of malpractice, if their charitable agents have been carefully selected.' In *Union Pacific R. Co. v. Artist,* (C. C. A.) 60 Fed. Rep., 365, it was said : 'If one contracts to treat a patient in a hospital—or out of it, for that matter—for any disease or injury, he undoubtedly becomes liable for any injury suffered by the patient through the carelessness of the physicians or attendants he employs to carry out his contract. If one undertakes to treat such a patient for the purpose of making profit thereby, the law implies the contract to treat him carefully and skillfully, and holds him liable for the carelessness of the physicians and attendants he furnishes. But this doctrine of *respondeat superior* has no just application where one voluntarily aids in establishing or maintaining a hospital without expectation of pecuniary profit. If one, out of charity, with no purpose of making profit, sends a physician to a sick neighbor or to an injured servant, or furnishes him with hospital accommodations and medical attendance, he is not liable for the carelessness of the physicians or of the attendants. The doctrine of *respondeat superior* no longer applies, because by fair implication he simply undertakes to exercise ordinary care in the selection of physicians and attendants who are reasonably competent and skillful, and does not agree to become personally responsible for their negligence or mistakes. The same rule applies to corporations and to individuals, whether they are engaged in dispensing their own charities or in dispensing the charitable gifts of others intrusted to them to administer.' . . . In *Downes v. Harper Hospital,* 101 Mich., 555 : 'If the contention of the learned counsel for the plaintiff be true, it follows that the charity or trust fund must be used to compensate injured parties for the negligence of the trustees, or architects and builders, upon whose judgment reliance is placed as to plans and strength of materials; of physicians employed to treat patients, and of nurses and attendants. In this way the trust fund might be entirely destroyed, and diverted from the purpose for which the donor gave it. Charitable bequests cannot be thus

thwarted by negligence. for which the donor is in no manner responsible. If in the proper execution of the trust a trustee or employee commits an act of negligence, he may be held responsible for his negligent act; but the law jealously guards the charitable trust fund, and does not permit it to be frittered away by the negligent acts of those employed in its execution. The trustees of this fund could not by their own direct act divert it from the purpose for which it was given, or for which the act of the Legislature authorized the title to be vested in the defendant. It certainly follows that the fund cannot be indirectly diverted by the tortious or negligent acts of the managers of the fund, or their employees, though such acts result in damage to an innocent beneficiary. Those voluntarily accepting the benefit of the charity accept it upon this condition.' "

The Supreme Court of Rhode Island, in a very able and learned opinion in *Basabo v. Salvation Army,* 85 Atl., 123, holds that a charitable institution is liable for the negligence of its employees, but the party injured in that case was not a patient; and the Supreme Court of Missouri, in an opinion equally strong and persuasive in *Adams v. University,* 99 S. W., 453, absolves such an institution from all liability for negligence, whether the result of the acts of its employees or of failure to exercise due care in their selection.

We prefer to adopt the middle course, which exempts from liability for the negligence of employees and requires the exercise of ordinary care in selecting them, as more consonant with authority and with the purposes for which such institutions are established.

The beneficiaries of charitable institutions are the poor, who have very little opportunity for selection, and it is the purpose of the founders to give to them skillful and humane treatment. If they are permitted to employ those who are incompetent and unskilled, funds bestowed for beneficence are diverted from their true purpose, and, under the form of a charity, they become a menace to those for whose benefit they are established.

It is, therefore, better for those committed to their care and for the institutions, and necessary to effectuate the purpose of their creation, to require the exercise of ordinary care in selecting employees, and in supervising them.

In the application of this principle the distinction between the negligent act of the employee and the negligence of the corporate body in selecting employees must be kept steadily in view, as it is only the latter which creates liability.

Affirmed.

HOKE, J., did not sit.