## PAUL JOHNSON v. CITY HOSPITAL COMPANY.

(Filed 13 February, 1929.)

**1. Hospitals—Distinction Between Charitable and Private Hospitals.**

A charitable hospital, in aid to its general charitable purpose, may, under certain circumstances, receive patients for pay without affecting its character as a purely charitable institution.

**2. Hospitals—Charitable Hospitals—Liability to Patients.**

A charitable hospital corporation is held to due care in the selection of suitable surgeons and employees.

**3. Hospitals—Private Hospitals—Liability to Patients.**

A private hospital corporation operated for profit is held liable for damages to its patients resulting to them from the negligent, malicious, or wilful torts of its physicians and surgeons or other employees, occurring within the scope of their respective duties of employment.

**4. Same—Master and Servant—Physicians and Surgeons.**

Evidence tending only to show that a physician owned a large part of the shares of stock of a private hospital corporation, and was employed by the corporation only in certain specific cases, had a private office in the institution for his separate patients, and that the plaintiff in this action was not entered as a patient in the hospital and that the hospital received no compensation from him, but that he was treated in such private office as an individual patient of the physician, is not sufficient to maintain an action against the corporation for damages resulting from alleged malpractice, there being no evidence to show that the physician acted within the scope of his duties to the corporation.

CIVIL ACTION, before *MacRae, Emergency Judge,* at May Term, 1928, of FORSYTH.

This cause was originally instituted in the County Court of Forsyth County and tried therein, resulting in a verdict for $5,000 in favor of the plaintiff. Certain exceptions were filed by the defendant and heard by the judge of the Superior Court, who overruled some of the exceptions made by the defendant and sustained others, and awarded a new trial. Whereupon, both parties appealed to the Supreme Court.

The evidence tended to show that the defendant, City Hospital Company, was a private corporation, and that at the time of the alleged injury to plaintiff, Dr. L. M. Glenn was president of said corporation and Dr. J. M. Sloan secretary thereof. These two physicians owned approximately fifty-four or fifty-five per cent of the capital stock of the corporation. They performed the duties of president and secretary in a clerical capacity only, and by agreement with the directors of the hospital were permitted to maintain private offices in the hospital building and had the exclusive right to treat all surgical cases coming to the hospital except cases involving the eye, ear, nose and throat. The fees

for all such work were paid to Drs. Sloan and Glenn, and constituted no part of the revenue of the hospital. On 12 December, 1925, the plaintiff, while employed by a spinning mill, broke his arm. He consulted Dr. Foxworth, who was unable to set the arm on account of sickness, and who took the plaintiff to Dr. Glenn's office in the City Hospital. Dr. Glenn was not present at the time, and Dr. Foxworth thereupon turned the plaintiff over to Dr. Sloan for treatment. Dr. Sloan took an X-ray picture of the plaintiff's arm and thereafter put a big plaster cast thereon. Thereupon the plaintiff left the hospital and was directed by Dr. Sloan to come to his office for further treatment. Dr. Sloan maintained an office in a drug store in the city of Gastonia, and plaintiff consulted him there on two or three occasions. Finally, Dr. Sloan took the plaintiff back to the hospital and had Dr. Glenn make an X-ray picture of the arm. After examining the X-ray picture plaintiff was told by the physician that his arm was in good condition. This occurred about 10 January, 1926.

Plaintiff offered further evidence tending to show that his arm was not properly treated or set, and that as a result thereof he had been permanently injured. Dr. Sloan, who treated the plaintiff, died 10 February, 1926. The X-ray machine at the City Hospital was owned by Dr. Glenn, and the Hospital Company had no control over said machine and received no part of the charges for X-ray pictures.

The testimony further disclosed that the plaintiff was not entered as a patient of the defendant hospital and no bill was rendered him for operating room fees or otherwise.

*Fred S. Hutchins and Archie Elledge for plaintiff.*
*Manly, Hendren & Womble and P. W. Garland for defendant.*

BROGDEN, J. What is the liability of a private hospital corporation, operated for gain, for the negligence of a surgeon, who is an officer, director, and stockholder, and who maintains an office and practices his profession within the hospital?

The boundary line between the liability of hospitals operated upon the basis of charity and not for the purpose of profit or gain, and those operated for such latter purpose is clearly marked. "The principle seems to be generally recognized that a private charitable institution, which has exercised due care in the selection of its employees, cannot be held liable for injuries resulting from their negligence, and the rule is not affected by the fact that some patients or beneficiaries of the institution contribute towards the expense of their care, where the amounts so received are not devoted to private gain, but more effectually to carry out the purposes of the charity. The rule is otherwise where fees are

charged with the expectation and hope of securing gain and profit and the proprietors of institutions of this class are held to the duty of ordinary care in the treatment and protection of those entrusted to them, and are responsible for injuries resulting from failure to perform this duty." *Green v. Biggs,* 167 N. C., 417, 83 S. E., 553; *Hoke v. Glenn,* 167 N. C., 594, 83 S. E., 807.

This rule of liability recognized in this jurisdiction is in accord with the prevailing weight of authority upon the subject. *Wetzel v. Omaha Maternity & General Hospital Association,* 148 N. W., 582; *Malcolm v. Evangelical Lutheran Hospital,* 185 N. W., 330; *Hayhurst v. Boyd Hospital,* 254 Pac., 528; *Meridian Sanatorium v. Scruggs,* 83 Southern, 532; *Jenkins v. Charleston General Hospital & Training School,* 110 S. E., 560; *Tulsa Hospital Asso. v. Juby,* 175 Pac., 519. The latter cases are fully annotated in 22 A. L. R., p. 341.

In the case at bar the action for damages is brought solely against the corporate defendant and not against the surgeon who, it is alleged, negligently injured the plaintiff. It is a well recognized rule of law that corporations are liable for the negligent, wilful or malicious torts of their servants or agents when acting within the course and scope of their employment. *Ange v. Woodmen,* 173 N. C., 33, 91 S. E., 586; *Cotton v. Fisheries Co.,* 177 N. C., 56, 97 S. E., 712; *Clark v. Bland,* 181 N. C., 110, 106 S. E., 491; *Sawyer v. Gilmers, Inc.,* 189 N. C., 7, 126 S. E., 183; *Kelley v. Shoe Co.,* 190 N. C., 406, 130 S. E., 32. The ultimate inquiry then, is whether or not Dr. Sloan, in treating the plaintiff, was acting as the servant or agent of the hospital corporation and within the course and scope of his employment. Clearly, the corporation would not be liable for the negligent acts of its officers merely because they were officers.

Plaintiff contends that the evidence, by correct interpretation, would show that Dr. Sloan was the agent of the corporation, and bases such contention upon substantially the following facts: Dr. Sloan was the secretary of the corporation and owned fourteen or fifteen per cent of the capital stock thereof. He maintained one of his offices in the hospital building and paid no rent for such office. Drs. Sloan and Glenn were the only physicians allowed to do surgical operations in the hospital except cases involving the eye, ear, nose, and throat. Upon the other hand, the evidence discloses that the plaintiff was never entered as a patient in the hospital, and that the hospital never charged or received any sum whatsoever from the plaintiff for treatment. The X-ray machine, which was used in making the X-ray picture of plaintiff's arm, was owned by Dr. Glenn and was set up in his private office in the hospital. The Hospital Company had no control of the X-ray machine or over the private office where it was situated. Dr. Sloan was not em-

ployed by the hospital to treat any patients and received no compensation whatever from the hospital except that he was required to pay no rent for the office which he used, such office being furnished in return for clerical services only, performed for the corporation by Dr. Sloan, who was the secretary thereof.

Viewing the facts with that liberality required by law, we are of the opinion that there is no evidence in the record tending to show that Dr. Sloan was the agent of the defendant corporation in treating the plaintiff. Indeed, the evidence discloses that the plaintiff was a private patient of Dr. Sloan, and that in treating him he was exercising an independent and individual professional judgment and skill.

The identical question involved in this case was considered by the Supreme Court of Georgia in *Black v. Fischer,* 117 S. E., 103. The Court said: "The fact that the surgeon was one of the principal stockholders in the defendant corporation would not render the corporation liable for unskillful and improper treatment of his patient; nor does the fact that the defendant company was largely under the control and management of the surgeon render the corporation liable for unskillful treatment rendered by the surgeon to one of his patients. In the petition in this case no act of the corporation is alleged to be the cause of the injuries detailed. There is no allegation that the defendant corporation undertook to direct the surgeon in the method of treatment and services which he rendered the plaintiff in this case. The allegation that L. C. Fischer was the agent and surgeon of the sanatorium company does not render the defendant company liable, without the further and necessary allegation, and the facts to sustain it, showing that the act of the agent was by the command or direction of or within the scope of the agent's employment."

The Supreme Court of Alabama considered the question in *Barfield v. South Highland Infirmary,* 68 Southern, 30. The Court said: "On the undisputed evidence the defendant corporation was entitled to the general charge which it requested and received. The medical and surgical treatment and operation were prescribed and performed by the defendant, Price, under an independent employment by plaintiff, and Price, although he was a shareholder and officer of defendant corporation, in treating and operating upon plaintiff acted not at all as the agent of said corporation nor within the line and scope of his authority as an officer. Beyond question or doubt any negligence, unskillfulness, or other wrong, if any there was, was his wrong and for it he alone was responsible."

Applying these principles of law to the facts disclosed in the record, we are of the opinion that the motion for nonsuit should have been allowed.

Reversed.