### HIGGONS v. PRATT INSTITUTE.
### No. 69.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1930.

699

in tort to recipients of its charity is a question of local law, as to which the federal courts will follow state decisions. See Paterlini v. Memorial Hospital Ass'n, 247 F. 639, 641 (C. C. A. 3); Henry W. Putnam Memorial Hospital v. Allen, 34 F.(2d) 927, 929 (C. C. A. 2). The injury to plaintiff occurred in Brooklyn, and, under the above assumption, is to be determined according to the law of the state of New York.

 The most recent authoritative exposition of that law is to be found in Hamburger v. Cornell University, 240 N. Y. 328, 148 N. E. 539, 42 A. L. R. 955. Concededly that case recognizes the rule of immunity when the negligence complained of is that of an instructor and due diligence has been exercised by the institution in the selection of competent instructors. It must also be conceded that payment of tuition by the plaintiff is immaterial in determining the charity's liability. Cf. Phillips v. Buffalo General Hospital, 239 N. Y. 188, 146 N. E. 199; Schloendorff v. New York Hospital, 211 N. Y. 125, 129, 105 N. E. 92, 52 L. R. A. (N. S.) 505, Ann. Cas. 1915C, 581; Ettlinger v. Trustees of Randolph-Macon College, 31 F.(2d) 869, 871 (C. C. A. 4). In the case at bar there is no claim that the defendant's instructors were negligently selected. Consequently, the defendant plants its claim to immunity squarely upon the Hamburger decision, and contends that the negligence, if any, which caused plaintiff's injury, was that of an instructor, and not imputable to it.

The plaintiff also relies upon the Hamburger Case, not the actual decision, but certain passages in the opinion, reading as follows (page 338 of 240 N. Y., 148 N. E. 539, 542):

"With us a hospital or university owes to patients or to students whatever duty of care and diligence is attached to the relation as reasonably implicit in the nature of the undertaking and the purpose of the charity. All that is thus included is not susceptible of enumeration in advance of the event. It cannot be less, however, than appropriate investigation of the character and capacity of the agencies of service from the highest to the lowest. This is a duty that devolves upon the corporation itself, and one not to be shaken off by delegation or surrender. Cf. Herman v. Bd. of Education, 234 N. Y. 196, 137 N. E. 24, 24 A. L. R. 1065."

 It is plaintiff's contention that the duty to investigate "agencies of service" was violated by permitting the use in its laboratory of a defective machine. But even if the quot-

Clarence E. Mellen, of New York City (Bernard J. Vincent, of New York City, of counsel), for appellant.

Wing & Wing, of New York City (James G. Purdy, of New York City, of counsel), for respondent.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above).

We shall assume, as do the parties, that whether an eleemosynary institution is liable

ed phrase may under some circumstances include the duty to investigate the condition of physical equipment, as to which we express no opinion, the theory of the Hamburger Case cannot sustain the plaintiff's contention on the facts disclosed by the present record. There the student was injured by an explosion of chemicals, due either to her own fault or to negligence of an instructor in wrongly labeling the bottle from which one of the chemicals was taken. If a machine such as that at bar is an "agency of service," so also was the chemical in that case. If the analogy of master and servant were to be taken, there was as sound a ground for holding the college for supplying unfit tools, i. e., chemicals, as for holding the present defendant for providing an unsafe place to work, i. e., a dangerous and unguarded machine. The institution's exemption from liability has nothing to do with such notions. It was placed upon the theory that instructors are not servants of the college, any more than surgeons are servants of a hospital. Servants proper may perhaps impose liability upon such an institution—that question was left open—but the fault at bar was not of these. If fault there was, it was of instructors. The machine was in charge of the supervising professor. He had formerly caused it to be equipped with a guard; his was the duty to have the guard replaced after it became broken; his the fault that the students were allowed, or directed, to go on with the machine unguarded; and the failure to warn plaintiff of the danger was also that of an instructor. So far as appears, no administrative officer or ministerial agent knew of the defect or was charged with the responsibility of inspecting the laboratory equipment used by the faculty in giving instruction. As we understand the law of New York, a charitable institution owes no absolute duty to furnish safe tools or a safe place to recipients of its charity, regardless of who may be responsible for keeping them safe. Between master and servant, such a duty exists, but not between beneficiary and charitable institution. At page 337 of the Hamburger opinion (148 N. E. 539, 541) Judge Cardozo said:

"We may lay aside the question whether there is a duty of the governing body to control by proper rules the general plan or system for the maintenance and operation of lecture room or laboratory. We do not now determine whether such a plan or system dangerous to life or limb could be adopted by the faculty without involving the university in liability for the failure to correct it. There

is no suggestion in the evidence that the method here in vogue was ineffective in its normal operation or faulty in design. The negligence, if any, had its origin, not in defects of plan or system, but in mistake or inattention in the doing or the omitting of something that was a detail of the work of teaching and incidental to the teaching function."

This language is apposite to the facts at bar. In the normal operation of the laboratory, the gears of the machine were guarded. The guard became broken, and, through error of judgment, the professor directed that its use be continued, and no warning of danger was given the students. These faults, if faults they were, were those of instructors, and their defaults under the law of New York are not imputed to the institution. Accordingly, it was error to refuse defendant's motion for a directed verdict.

The judgment is reversed, and the cause remanded.