DEGROOT *v.* THE EDISON INSTITUTE.

1. CHARITIES—HISTORICAL MUSEUM—INCOME—DEFICIT.
   In action for damages sustained when horses bolted as plaintiff left horse-drawn vehicle during thunder and hail storm on grounds of large historical museum maintained by defendant corporation, record showing that defendant had been incorporated as a nonprofit corporation for purpose of assembling and exhibiting historical and other information for educational purposes, that cost of maintenance far exceeded income from admission fees, charged adults only, and from sale of objects, and that the large annual deficit was paid by the incorporators and another affiliate, established defendant as a nonprofit and public benevolent institution, as a matter of fact and law (2 Comp. Laws 1929, § 9944).

2. CORPORATIONS—NONPROFIT CORPORATION—STATUS—INCOME.
   Fact that there is incidental income from admission fees and from sale of objects manufactured on premises of large historical museum maintained by defendant corporation does not change its status from that of a nonprofit corporation where there is no showing that such income or profit is the objective of the corporation.

3. SAME—STATUS—LIABILITY INSURANCE.
   Fact that a nonprofit corporation carries liability insurance does not so change its status as to make it liable for an injury for which it would not otherwise be liable.

4. CHARITIES—TORTS OF SERVANTS—NEGLIGENCE.
   A charitable institution is not liable to a beneficiary for the torts of its servants, unless it was negligent in the selection and retention of the employees and the instrumentalities used by it in carrying on and furthering its benevolent purposes.

5. SAME—TORTS—HISTORICAL MUSEUM—HORSE-DRAWN VEHICLES —NEGLIGENCE.
   An eleemosynary institution is exempt from liability for injuries to its beneficiary resulting from negligence of its employee

in operating a horse-drawn vehicle on premises of large historical museum during a thunder and hail storm in the absence of any showing that such defendant nonprofit corporation was negligent in selecting and retaining its employee or the team of horses in question.

Appeal from Wayne; Neal (Max E.), J., presiding. Submitted June 9, 1943. (Docket No. 31, Calendar No. 42,205.) Decided September 7, 1943.

Case by Leona M. DeGroot against The Edison Institute, a Michigan corporation, for personal injuries sustained when horses pulling cab in which plaintiff was riding bolted. Verdict for plaintiff. Judgment for defendant *non obstante veredicto.* Plaintiff appeals. Affirmed.

*William J. Eggenberger,* for plaintiff.

*Frederick J. Ward,* for defendant.

NORTH, J. This is a personal injury case, tried before a jury which returned a verdict in favor of the plaintiff for $1,000. It was agreed by counsel in the absence of the jury that the questions of law and fact relating to defendant's alleged legal status as a charitable corporation, its liability for the torts of its agents and the effect of liability insurance thereon should be reserved under the provisions of the Empson act * whereby counsel could submit briefs on the law and take testimony as to those facts, if necessary, after the verdict. Accordingly the case was tried before the jury on the question of negligence and damages alone. After the verdict, proof was taken on the matters relating to defendant's incorporation, its general purpose and the

* See 3 Comp. Laws 1929, § 14531 *et seq.* (Stat. Ann. § 27.1461 *et seq.*).—REPORTER.

way in which the affairs of the defendant are conducted. At conclusion of this proof, defendant's motion for judgment *non obstante veredicto* was granted and plaintiff appeals.

On June 2, 1936, plaintiff, accompanying other members of a social club, visited defendant's premises which are commonly known as the "Greenfield Village" near Dearborn, Michigan. Plaintiff paid the entrance fee of 25 cents required of adults. During the day, in which it was apparent that a storm was gathering, plaintiff reached an exhibit known as the jewelry store. After some time, the weather becoming very threatening, plaintiff and her group sought and obtained transportation to the waiting station in one of the horse-drawn vehicles provided by defendant for the convenience of its guests. As the carriage arrived at the waiting station the storm broke in great violence, accompanied by thunder and lightning, a high wind and hail. The storm was of such violence that it caused considerable damage to buildings in the vicinity. As plaintiff was in the act of stepping down from the exit of the carriage, plaintiff claims the horses bolted and threw her to the ground and caused her injuries.

Defendant corporation was incorporated as a nonprofit corporation under Act No. 84, part 1, chap. 1, § 2, Pub. Acts 1921 (2 Comp. Laws 1929, § 9944). Its purposes are set forth in article 3 of its articles of association, viz:

"The purpose or purposes for which it is formed are as follows:

"(a) To assemble and exhibit, publish and disseminate historical, scientific, sociological and artistic information and to do any and all things calculated directly or indirectly to advance the cause of education, whether general, technical, sociological or aesthetic.

"(b) To demonstrate, for educational purposes, the development of American arts, sciences, customs and institutions by reproducing or reenacting the conditions and circumstances of such development in any manner calculated to convey a realistic picture thereof.

"(c) To purchase, take on lease, or otherwise acquire, take over, hold, sell, liquidate, or otherwise dispose of such property, real or personal and tangible or intangible as may seem expedient to a furtherance of its purposes; to alter, extend, or develop the same, and to pay for any such properties or their alteration, extension, or development in cash, stock, bonds, debentures, securities, or obligations of this corporation, or otherwise."

The incorporators and sole stockholders were, at the time of the trial, Henry Ford, Clara J. Ford, and Edsel B. Ford.

For the accomplishment of its object, defendant has gathered together a large number of objects having an historical and educational value. The greater part of the material has been housed and arranged for display to the public to such an extent that "Greenfield Village" is unique for its size and completeness as an historical museum. An investment of approximately $20,000,000 is represented in land and buildings and equipment. A large staff of persons is maintained on the premises for the maintenance of the property, the guidance of guests, and the operation of early American industries in their original form. The products of these industries are sold to the public on the premises. A charge of 25 cents as admission is made to adults, but school children are generally admitted free. The cost of maintenance far exceeds the income produced by the admission fees and sale of objects. The

deficit is annually paid by the incorporators and their affiliate, the Ford Foundation.

As a part of its equipment, defendant has gathered a number of original horse-drawn vehicles: cabs, hacks, carriages, et cetera. Trained drivers and horses are provided, and it is the custom for these vehicles to circulate on the premises, giving guests rides free of charge. The purpose of these vehicles is both educational and to provide a means of transportation on the extensive premises. It was in the use of one of these vehicles that plaintiff was injured. The evidence is uncontroverted that the vehicle from which plaintiff fell was in good mechanical condition, that its driver was experienced in the handling of horses, and that the horses were gentle and had been trained for their work.

A careful reading of the record establishes that defendant is a nonprofit and public benevolent institution, both as a matter of fact and law. Defendant is exempt from Federal income taxation. The articles of incorporation are in accord with provisions of the act applicable to a nonprofit corporation. No material profit inures to the incorporators or stockholders; rather it is they who pay the operating deficit. The fact that there is incidental income from the admission fees and the sale of the objects manufactured on the premises does not change the status of a nonprofit corporation where there is no showing that such income or profit is the objective of the corporation. See *Downes* v. *Harper Hospital,* 101 Mich. 555 (25 L. R. A. 602, 45 Am. St. Rep. 427); *Daszkiewicz* v. *Detroit Board of Education,* 301 Mich. 212; *Bodenheimer* v. *Confederate Memorial Ass'n* (C. C. A.), 68 Fed. (2d) 507. Nor does the fact that the nonprofit corporation carries liability insurance so change its status as to make the cor-

poration liable for an injury for which it would not otherwise be liable.

The excellent opinion of Circuit Judge Neal who heard this case so aptly states the problem that we quote therefrom:

"The controlling consideration therefore is whether or not the defendant is in law a benevolent organization. If it is, then it is apparent upon this record that the plaintiff as a beneficiary of the defendant's benevolence may not recover for the negligence of its employees in the absence of proof that it was negligent in selecting and retaining the services of its driver, Creasey, as well as in acquiring and permitting the use of the team for plaintiff's transportation on the day in question. The law is well settled in this State that a charitable institution is not liable to a beneficiary for the torts of its servants, unless it was negligent in the selection and retention of the employees and the instrumentalities used by it in carrying on and furthering its benevolent purposes. *Downes* v. *Harper Hospital*, 101 Mich. 555 (25 L. R. A. 602, 45 Am. St. Rep. 427); *Pepke* v. *Grace Hospital*, 130 Mich. 493; *Robinson* v. *Washtenaw Circuit Judge*, 228 Mich. 225; *Bruce* v. *Henry Ford Hospital*, 254 Mich. 394; and *Greatrex* v. *Evangelical Deaconess Hospital*, 261 Mich. 327 (86 A. L. R. 487).

"While the above cases are not factually identical with the one at bar in that they involve hospitals rather than institutions of the character here shown, nevertheless they were held to be exempt from liability to the patient beneficiary not because they were hospitals but because their purpose and method of operation were charitable, thereby clearly and definitely establishing the doctrine of legal exemption in this State for charitable institutions. * * *

"Counsel for the plaintiff has been resourceful in his argument and diligent in the citation of au-

thorities in support of his position.   In certain jurisdictions they would undoubtedly be impressive, but not in this State.

"It follows from the foregoing that inasmuch as there is no proof in this case that the defendant was negligent in selecting and retaining its driver, Creasey, or in selecting and retaining the team in question, the plaintiff, as a beneficiary of the defendant's benevolence, may not recover for the negligence of defendant's driver.   *   *   *   The verdict of the jury is therefore set aside and a judgment of no cause of action may be entered in favor of the defendant."

In this jurisdiction it is well settled that eleemosynary institutions are exempt from such liability as is asserted in the instant case.   Such a rule was adopted for the protection of those institutions and should it be desirable to depart from that rule, it should be done by legislative action.

Judgment is affirmed, with costs to defendant.

Boyles, C. J., and Chandler, Starr, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.