SHIRLEY DIANE WILLIAMS, AN INFANT, BY HER NEXT FRIEND, WILLIE WILLIAMS, JR., v. RANDOLPH HOSPITAL, INC.

(Filed 25 March, 1953.)

**1. Hospitals § 6: Charities § 4—**
    It is settled law in this jurisdiction that a charitable institution may not be held liable to a beneficiary of the charity for the negligence of its servants or employees if it has exercised due care in their selection and retention.

**2. Appeal and Error § 51b—**
    The salutary need for certainty and stability in the law requires, in the interest of sound public policy, that the decisions of a court of last resort affecting vital business interests and social values, deliberately made after

ample consideration, should not be disturbed, under the doctrine of *stare decisis*, except for most cogent reasons.

**3. Constitutional Law § 8a—**

Whether some change should be made in the doctrine of immunity of a charity for the negligence of its servants and employees if the charity has used due care in their selection and retention, is a question of broad public policy to be pondered and resolved by the lawmaking body.

**4. Hospitals § 6—**

The rule that a charity is not liable for the negligence of its servants and employees provided it has used due care in their selection and retention, applies to a paying patient of a charitable hospital.

PARKER, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting.

APPEAL by plaintiff from *Nettles, J.,* at May Civil Term, 1952, of MOORE.

Civil action to recover damages for personal injuries sustained by the plaintiff while a patient in the defendant's hospital, heard below on demurrer to the affirmative defense set up in the defendant's answer.

The plaintiff, an infant, instituted this action, through her father as next friend, to recover damages for personal injuries, in the nature of third degree burns, alleged to have been received by the infant while under a "croup tent," as a result of the negligence of the servants and employees of the defendant. It is alleged that the plaintiff was a paying patient in the defendant's hospital, her allegations being that the bill rendered by the hospital and paid by her father was for an amount "more than adequate and sufficient to defray the costs and expenses of all care and services rendered by the defendant to the plaintiff in treating her for pneumonia."

By answer the defendant denies the plaintiff's allegations of negligence, and by way of affirmative defense alleges that the defendant "is a nonstock charitable corporation which is not and never has been operated for profit . . ."

The plaintiff demurred to the affirmative defense upon the ground that the fact that the defendant is a non-profit, charitable corporation, as alleged by the defendant, does not entitle it to immunity from liability for the injuries sustained by the plaintiff due to the negligence of the servants and employees of the defendant.

The court below, being of the opinion that the defendant's affirmative defense was sufficient in law to constitute a defense to the action, entered judgment overruling the demurrer.

From the judgment so entered the plaintiff appealed.

*W. D. Sabiston, Jr., for plaintiff, appellant.*
*Spence & Boyette and H. M. Robins for defendant, appellee.*

JOHNSON, J.　It is settled law in this jurisdiction that a charitable institution may not be held liable to a beneficiary of the charity for the negligence of its servants or employees if it has exercised due care in their selection and retention. *Barden v. R. R.,* 152 N.C. 318, 67 S.E. 971; *Hoke v. Glenn,* 167 N.C. 594, 83 S.E. 807; *Herndon v. Massey,* 217 N.C. 610, 8 S.E. 2d 914; *Johnson v. Hospital,* 196 N.C. 610, 146 S.E. 573; *Smith v. Duke University,* 219 N.C. 628, 14 S.E. 2d 643. It is to be noted that the rule to which we adhere holds a charitable institution liable for failure to exercise due care in the selection and retention of its servants *(Hoke v. Glenn, supra)*, and also permits a servant to recover for administrative negligence of the charity. *Cowans v. Hospital,* 197 N.C. 41, 147 S.E. 672. Thus the rule to which we adhere is that of qualified immunity.

The plaintiff, conceding the existence of the rule which obtains with us, takes a dual position in prosecuting this appeal. First, it is urged that the doctrine of immunity should be eliminated entirely from our law. And as an alternate contention, the plaintiff insists that in any event the instant case does not come within the bounds of our rule of immunity. This because the plaintiff was a paying patient in the defendant's hospital. Our attention is directed to the fact that in none of the decided cases in this jurisdiction has decision been made to turn on the question of the status of the plaintiff as a paying or non-paying patient or patron. Here the plaintiff points to what was said in the recent case of *Williams v. Hospital Association,* 234 N.C. 536, 67 S.E. 2d 662, decided 21 November, 1951:

"While the doctrine followed in this jurisdiction clearly exempts an eleemosynary hospital from liability for the negligence of its servants, who have been selected with due care, in the care and treatment of those who have accepted the benefits of the charity, so far this Court has not applied the doctrine as against one who is not a recipient of the charity but who, instead, pays full compensation for the services rendered. As to such patient, is the plea available to the defendant? While some of the cases cited contain dicta bearing on the question, as yet there is no authoritative decision in this jurisdiction."

The plaintiff does not allege a failure of the defendant corporation to exercise due care in selecting its servants and employees. *Barden v. R. R., supra; Hoke v. Glenn, supra.* Accordingly, the plaintiff's demurrer, which admits the defendant is a charitable hospital, presents for decision the broad question whether we should overthrow entirely our rule of immunity, and also the alternate question whether or not, assuming the

rule is retained, it should be applied against a paying patient of a charitable hospital.

It has been forcefully argued by counsel for the plaintiff that we should re-examine our position and the policy behind it and determine that our rule of qualified immunity shall no longer be followed. Counsel has been diligent in the citation of authority, and the plaintiff's cause has been presented with great resourcefulness.

An examination of the authorities discloses that a great divergence of opinion exists in the various jurisdictions on the question of liability of a charitable institution for the negligence of its servants and employees. The range of decision is from absolute liability to complete immunity, with the weight of authority being on the side of immunity, either total or qualified.

The doctrine of immunity as applied in various jurisdictions rests upon different considerations. One line of cases bases the doctrine on what is called the "trust fund theory," that is to say, that all funds of charitable institutions are held in trust for the particular purpose for which the charity was founded, and that it would amount to a breach of trust to apply them to other uses—that to give damages out of the trust fund would not be to apply it to the object which the author of the fund had in view, but would be to divert it to an entirely different purpose. Other cases proceed upon the theory that one who accepts the benefit of a charitable institution is taken impliedly to have assented to assume the risk of negligent injuries caused by servants properly selected and retained, or to have waived liability for such injuries. In other cases decision is rested on considerations of public policy, with emphasis being given to the fact that these charitable and private eleemosynary institutions frequently perform public functions and render vital services within the zone of governmental duty.

It would serve no useful purpose for us to discuss in detail the merits or demerits, or the strong or weak points of these different theories. Suffice it to say that each of them seems to be subject to some measure of meritorious criticism. But regardless of the reasons given for the results worked out, the overwhelming numerical weight of authority is on the side of immunity, though the trend of decision seems to be toward qualifying or abandoning the rule. See *Herndon v. Massey, supra;* Annotation, 25 A.L.R. 2d 29; 10 Am. Jur., Charities, Sec. 160 *et seq.;* 14 C.J.S., Charities, Sec. 75; Prosser, Torts (1941), p. 1079 *et seq.;* Zollman, American Law of Charities, Sections 798 *et seq.;* 77 U. of Pa. L. Rev. 191; 19 Michigan L. Rev. 395; 30 N. C. L. Rev. 67; *President and Directors of Georgetown College v. Hughes,* 130 F. 2d 810.

However, in evaluating the weight of authority it must be kept in mind that in a number of jurisdictions the same result as that of qualified

immunity is effected in the mode of applying the doctrine of *respondeat superior,* stress being laid on the inapplicability of this doctrine upon the theory that a charity has performed its whole duty when it tenders to a beneficiary a competent servant and that thereafter the servant becomes the servant of the beneficiary rather than the servant of charity. 10 Am. Jur., Charities, Sec. 10; Zollman, American Law of Charities, Sec. 820. It is noted that in a number of jurisdictions, including England and Canada, nurses, no less than physicians, when acting in professional capacity have been treated as not being the servants of the hospital but independent experts performing services for the patient. Other cases hold that a charitable hospital undertakes only to supply competent personnel, and is not responsible for the improper performance by such personnel of its duties. Annotation, 25 A.L.R. 2d 29, pp. 40, 65, and 170 *et seq.*

An examination of the decisions of this Court dealing with the subject under discussion discloses that the rule of immunity is deeply embedded in the structure of our common law. Since the doctrine was first pronounced, it has been reaffirmed over and over again through the years. It is to be noted that the rule with us applies not only to hospitals, but presumably to a wide variety of institutions, such as orphanages, schools, colleges, churches, and numerous other allied benevolent services. A doctrine so deeply and widely implanted as is this in the structure of our common law, developed and congealed through the years by an unvarying line of judicial decisions, presumably reflecting the tested social values of our communities and the approved sentiments of our people, should not be lightly overturned or whittled away by this Court. The salutary need for certainty and stability in the law requires, in the interest of sound public policy, that the decisions of a court of last resort affecting vital business interests and social values, deliberately made after ample consideration, should not be disturbed except for most cogent reasons. Such is the gist of the doctrine of *stare decisis.* See 14 Am. Jur., Courts, Sections 60, 61, and 65. We are constrained to the view that this doctrine is applicable to the instant case.

For us to withdraw immunity from charitable institutions at this time, against the existing background of decisions of this Court, would in effect be an act of judicial legislation in the field of public policy. See these decisions from other jurisdictions expressing like views respecting application of the doctrine of *stare decisis* is similar circumstances: *Howard v. South Baltimore General Hospital,* 191 Md. 617, 62 A. 2d 574; *Re Erwin's Estate,* 323 Mich. 114, 34 N.W. 2d 480; *Jones v. St. Mary's Roman Catholic Church,* 7 N.J. 533, 82 A. 2d 187; *Gregory v. Salem General Hospital,* 175 Ore. 464, 153 P. 2d 837; *Bond v. Pittsburgh,* 368 Pa. 404, 84 A. 2d 328; *Miller v. Mohr,* 198 Wash. 619, 89 P. 2d 807;

*Foley v. Wesson Memorial Hospital,* 246 Mass. 363, 141 N.E. 113; *De Groot v. Edison Institute,* 306 Mich. 339, 10 N.W. 2d 907; *Magnuson v. Swedish Hospital,* 99 Wash. 399, 169 P. 828.

Whether some change in our rule is advisable as to hospitals operated by private and public charities and by political subdivisions of the State is a question of broad public policy to be pondered and resolved by the lawmaking body.

We come now to consider the question whether the plaintiff's status as a paying patient should be treated as exempting her from our rule of immunity so as to render the defendant hospital liable to her for the negligence of its employees.

Here the gist of the plaintiff's position is that where a patient pays or obligates to pay for the services rendered, or is accepted and cared for on that basis, by a charitable hospital, a contractual relation is thereby created between the parties under which the hospital, in consideration of payment or in contemplation thereof, is obligated to exercise due care in taking care of the patient and becomes liable for negligent failure to do so, the theory being that such paying patient is in point of fact a stranger to the charity. This view finds support in a few jurisdictions. See 10 Am. Jur., Charities, Sec. 151, p. 701; *Tucker v. Mobile Infirmary Asso.,* 191 Ala. 572, 68 So. 4.

However, our examination of the authorities on the subject discloses numerous well-considered decisions holding that the immunity of charity from tort liability should not be made to depend upon whether or not the patient or patron assumes the obligation to pay for the services rendered to him by charity. This line of decisions represents what we consider to be the decided weight of authority, both in quality of reasoning and in numerical volume. From this line we cite these as illustrative cases: *Powers v. Massachusetts Homoeopathic Hospital,* 109 F. 294, *cert.* den. 183 U.S. 695, 46 L. Ed. 394, 22 S. Ct. 932; *Downs v. Harper Hospital,* 101 Mich. 555, 60 N.W. 42, 25 L.R.A. 602, 45 Am. St. Rep. 427; *Nicholas v. Evangelical Deaconess Home & Hospital,* 281 Mo. 182, 219 S.W. 643; *Duncan v. Nebraska Sanitarium & Benev. Asso.,* 92 Nev. 162, 137 N.W. 1120, 41 L.R.A. N.S. 973, Ann. Cas. 1913E 1127; *D'Amato v. Orange Memorial Hospital,* 101 N.J.L. 61, 127 A. 340; *Taylor v. Flower Deaconess Home,* 104 Ohio St. 61, 135 N.E. 287, 23 A.L.R. 900; *Gable v. Sisters of St. Francis,* 227 Pa. 254, 75 A. 1087, 136 Am. St. Rep. 879; *Lindler v. Columbia Hospital,* 98 S.C. 25, 81 S.E. 512; *St. Paul's Sanitarium v. Williamson* (Tex. Civ. App.) 164 S.W. 36; *Weston v. Hospital of St. Vincent,* 131 Va. 587, 107 S.E. 785, 23 A.L.R. 907; *Wharton v. Warner,* 75 Wash. 470, 135 P. 235; *Roberts v. Ohio Valley General Hospital,* 98 W. Va. 476, 127 S.E. 318, 42 A.L.R. 968; *Schau v. Morgan,* 241 Wis. 334, 6 N.W. 2d 212; *Ettlinger v. Trustees of Randolph-Macon College*

(C.A. 4th Va.), 31 F. 2d 869; *Higgons v. Pratt Institute,* 45 F. 2d 698; *Bodenheimer v. Confederate Memorial Asso.,* 68 F. 2d 507, cert. den. 292 U.S. 629, 78 L. Ed. 1483, 54 S. Ct. 643.

The gist of the rule deducible from these decisions is succinctly stated in 10 Am. Jur., Charities, Sec. 151:

"The fact that patients who are able to pay are required to do so does not deprive a corporation of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not private gain, but contribute to the more effectual accomplishment of the purpose for which the charity is founded."

In *Powers v. Massachusetts Homoeopathic Hospital, supra,* opinion by *Lowell, J.,* it is said:

"The plaintiff was what is sometimes called a 'paying patient,' . . . Upon this ground her counsel has sought to distinguish her case from that of a patient in the hospital who pays nothing. In our opinion, the difference is immaterial. As has been said, the defendant was a charitable corporation; . . . That the ministrations of such a hospital should be confined exclusively to the indigent is not usual or desirable. Those of moderate means from necessity, and not a few rich people from choice, resort to great charitable hospitals for treatment, especially in surgical cases. Throughout the world this is the custom in these institutions, whether they are maintained by individual, religious, or municipal charity. . . . In our opinion, a paying patient in the defendant hospital, as well as a non-paying patient, seeks and receives the services of a public charity.

"That such a hospital in its treatment of a rich patient shall be held to a greater degree of care than in its treatment of a pauper is not to be tolerated. . . ."

In *Downs v. Harper Hospital, supra,* it is stated:

"The fact that patients who are able to pay are required to do so does not deprive the defendant of its eleemosynary character, nor permit a recovery for damages on account of the existence of contract relations. The amounts thus received are not for private gain, but contribute to the more effectual accomplishment of the purpose for which the charity was founded."

In *D'Amato v. Orange Memorial Hospital, supra,* it is said:

"In our opinion, public policy requires that a charitable institution maintaining a hospital be held not liable for injuries resulting to patients through the negligence or carelessness of its physicians and nurses, even if the injured person were a pay patient; payment for board, medical services, and nursing in such case going to the general fund to maintain the charity."

In *Wharton v. Warner, supra,* it is said:

"The same rule applies where the plaintiff has paid for the services rendered, where the amount received was not for private gain, but to more effectually accomplish the purposes for which the charity was founded."

In *Roberts v. Ohio Valley General Hospital, supra,* it is stated:

"The fact that one is a paying patient does not alter the rule. Such patient is the recipient of the donors' gratuity only in a lesser degree than one who makes no payment. The hospital building, with its equipment, management, and its great possibilities for the alleviation of suffering, was provided by charity. In using the organization made possible and supported by that charity, a paying patient, to that extent, benefits by the charity."

After full consideration of the arguments *pro* and *con,* we are impelled to the conclusion that no exception should be made in our rule of immunity in favor of paying patrons of charitable institutions.

It follows that the judgment below is

Affirmed.

PARKER, J., took no part in the consideration or decision of this case.

BARNHILL, J., dissenting: When a person applies for and receives gratuitous accommodations from a hospital engaged in the business of serving charity patients, he has little cause to complain about the quality of service he receives. I can, therefore, concur in the conclusion that an eleemosynary hospital incurs no legal liability, under the doctrine of *respondeat superior,* for injuries suffered by a charity patient as a proximate result of the negligence of one of its nurses who has been selected with due care. But a different situation arises and a different principle applies when a hospital charges and receives pay for services rendered a patient in its care. It thereby assumes an obligation to exercise due care and should be subjected to the same responsibility that is imposed on others.

One who enters the market place and engages in commercial transactions should be held to the same standards exacted of others similarly situated. That he spends most of his time and money in performing acts of charity is no cause to excuse him for his negligence in performing a duty for which he receives a *quid pro quo.*

Is an eleemosynary hospital to be relieved of all legal liability for the negligence of one of its servants who operates one of its automobiles in such a careless manner that he collides with and kills some innocent third party? Is it to be held immune from liability for the negligent acts of all of its servants? If not, then why should it receive such special con-

sideration in respect to one who pays for the services he receives? This I am unable to perceive. For that reason I vote to reverse.