Barbara L. VANAMAN, an infant, by her next friend, Nancy M. Vanaman, Walter Lee Vanaman and Nancy M. Vanaman, Plaintiffs,

v.

MILFORD MEMORIAL HOSPITAL, INC., a Delaware corporation, and Dr. C. Edward Graybeal, Defendants.

Superior Court of Delaware, New Castle.

Jan. 15, 1970.

Houston Wilson, Georgetown, Courtney H. Cummings, Jr., Wilmington, for plaintiffs.

Victor F. Battaglia, Wilmington, for defendant Hospital.

William T. Lynam, Wilmington, for defendant Dr. C. Edward Graybeal.

QUILLEN, Judge.

The matter for decision is a motion for summary judgment by the defendant Milford Memorial Hospital.

This is a malpractice action brought by Walter Lee Vanaman and Nancy M. Vanaman as parents, and by Barbara L. Vanaman, the minor plaintiff, by her next friend Nancy M. Vanaman. For the purpose of this motion, the plaintiffs' interest is identical. Plaintiffs seek damages resulting from injuries incurred by Miss Vanaman due to the alleged negligence of defendants, Milford Memorial Hospital, Inc. and Dr. C. Edward Graybeal.

On June 27, 1964, Miss Vanaman fell while being chased by a bumblebee in her backyard. While running, she twisted her ankle in a small hole in the yard. Her family physician could not be reached and she was taken to the Milford Memorial Hospital approximately two hours after the accident. Upon arrival, Dr. Graybeal, the staff member on duty, ordered X-rays to be taken. A fracture was discovered and Dr. Graybeal put a cast on Miss Vanaman's left leg.

The complaint alleges that the cast was put on too tightly and that as a result of the tight cast during the period the cast was on, from June 27, 1964 until August 6, 1964, and as a result of the failure to diagnose and treat a resulting physical condition throughout the period from August 6, 1964 until January 5, 1965, that Miss Vanaman suffered injury to the vascular, lymph, cellular and nervous tissues and cells of her leg.

Defendant, Milford Memorial Hospital, Inc., claims that the alleged acts of negligence asserted were the acts of the defendant Dr. Graybeal who was not the servant, agent or employee of the Hospital and therefore, even if the doctor was negligent, the Hospital is not liable. The plaintiff has pleaded no independent acts of negligence on the part of the Hospital and the motion thus turns on vicarious liability.

In Delaware, non-profit hospitals are responsible for their own negligence and are responsible for the negligent acts of their agents and employees under the doctrine of respondeat superior. Durney v. St. Francis Hospital, 7 Terry 350, 83 A. 2d 753 (1951).

The Court has had little success in finding an abundance of reported case law on all fours with the present case factually. It is apparent that the defendant had similar difficulty. The problem is, however, simply one of the law of agency and the traditional question of master-servant versus independent contractor. See Annotation 69 A.L.R.2d 305–339.

Of course, difficulty frequently arises in deciding in a particular case whether the doctor was a servant of the hospital or an independent contractor. Two situations appear clear.

In the normal situation, where a patient consults his own physician and hospital care is recommended, the hospital to which the patient is admitted and cared for by his own physician is not liable for the physician's negligence merely because the doctor is a member of the "staff" of the hospital. Mayers v. Litow, 154 Cal.App.2d 413, 316 P.2d 351 (1957). Such physician is regarded as an independent contractor in its relation to the hospital and to the patient.

Where, however, a person is taken directly to a hospital; such as where he is rendered unconscious in an accident; and a physician hired by the hospital, such as an intern or resident, is guilty of malpractice in treatment or diagnosis, a different situation arises. The annotation previously noted says the following at 69 A.L.R.2d 309 of such a case:

"Such a physician usually stands in a position with respect to the hospital which, under the normal tests of the existence of the master-servant relationship, would call for a ruling that he was the hospital's servant. In other words, such a doctor is normally paid a salary by the hospital, he spends all his working hours under the direction of the hospital's staff, he does not maintain a practice of his own, etc., and the result would normally be, and not infrequently is, that the physician must be regarded as a servant or agent of the hospital."

In this situation, the hospital would be liable under the doctrine of respondeat superior. Brown v. Moore, 247 F.2d 711 (3rd Cir.1957). But see Moon v. Mercy Hospital, 150 Colo. 430, 373 P.2d 944 (1962).

The Hospital contends that Dr. Graybeal was not its agent, servant or employee. It argues that the most important test in determining whether a person is an independent contractor or servant is the degree of control the employer has over the work done. The Hospital further argues that it had no control of the work done by Dr. Graybeal in the instant case but merely introduced him to the plaintiff. Therefore, the Hospital contends that Dr. Graybeal is an independent contractor.

Plaintiff argues that the Hospital held itself out as providing medical services, that she walked into the emergency ward without an attending physician, and that the Hospital undertook the treatment of such patient through its staff. The plaintiff concludes, under the present facts, that the Hospital is liable for the negligent acts of its staff physician. Plaintiff also argues that, regardless of actual authority, the Hospital should be liable under the apparent authority doctrine and that, as far as plaintiff was concerned, Dr. Graybeal's presence in the emergency room and his assumption of care was an act of the Hospital.

The precise facts surrounding the arrival at the Hospital thus become important. In the present case, Miss Vanaman's family doctor could not be located. His nurse ad-

vised Miss Vanaman to go to the Hospital for X-rays. Upon arrival at the Hospital, Mrs. Vanaman was asked if she wanted any specific doctor called. She explained that she did not know any doctor at the Hospital and that any doctor would be all right. Shortly thereafter, Dr. Graybeal introduced himself and began caring for Miss Vanaman.

Physician practice at the Hospital was limited to the medical staff. Dr. Graybeal was on the active medical staff of the Hospital. Such physicians were selected to attend all free patients. Only active medical staff members could vote or hold office in the organized medical staff. Active medical staff members were not salaried. Under the rules, pay patients were attended by their own physicians, and, "[i]n the case of a pay patient applying for admission who [had] no attending physician, he [was] assigned to the members of the active medical staff on service in rotation."

In this case, Dr. Graybeal continued to treat Miss Vanaman in his own office as well as during Hospital visits. To the extent of Blue Cross coverage, Dr. Graybeal was paid directly by the patient's insurer. The Hospital was paid separately for emergency room supporting service.

■ The mere fact that the medical staff was an organized body with membership qualifications, privileges and duties approved by the governing board of the Hospital does not make such members the servants of the Hospital for patient care. See Johnson v. City Hospital Co., 196 N.C. 610, 146 S.E. 573, (1962), a case where only two physicians were permitted to do general surgery.[1] Such an organization is a common means of providing community medical service. It is also common for a hospital to furnish the necessary physical plant and technical staff to support physicians. Smith v. Duke University, 219 N.C. 628, 14 S.E.2d 643 (1941).

■ Moreover, it is also clear that, under the rules, it was expressly intended only that the Hospital serve as a referral service for pay patients with no physician of their own. In performing this function, the Hospital did not make Dr. Graybeal its servant. Smith v. Duke University, *supra*.

Finally, whether the matter be considered as contract or tort, apparent authority or estoppel, the specific facts in the instant case fail to demonstrate that the Hospital held itself out as a provider of physician care for Miss Vanaman. An inquiry was made by a hospital employee of the patient's choice of physician. The patient, having no physician available, expressed no preference, indicating any doctor would do. A referral, pursuant to established policy, was made to a member of the active medical staff. The physician's services were paid directly by the patient's insurer. The Hospital provided the facility and support. The physician himself provided the independent professional expertise. These facts do not constitute a manifestation by the Hospital that the professional physician was its servant for the purpose of medical care rendered by him. Restatement Agency 2d, § 8 and § 8B. Cf. Brown v. Moore, *supra*, and the specific facts there relied upon.

The Hospital is not liable by respondeat superior. The motion of the Milford Memorial Hospital, Inc., for summary judgment is granted. It is so ordered.

---

1. Insofar as this case and the *Smith* case, *infra*, rely on the charitable immunity doctrine, they are no longer the law of North Carolina.